[No. 19590.    Department Two.—April 2, 1896.]

P. N. IONS, RESPONDENT, v. D. F. HARBISON, AP-
PELLANT.

HUSBAND AND WIFE—DEED TO WIFE—SEPARATE PROPERTY—PRESUMP-
TION.—By a grant, bargain, and sale deed from the husband to the wife, expressing a money consideration, the wife presumptively becomes seised of the land as of her separate estate.

ID.—HOMESTEAD ON WIFE'S PROPERTY—DEATH OF WIFE—SUCCESSION OF
HUSBAND.—Where a homestead is declared upon the separate property of the wife, by the act of the wife, subject to a mortgage thereupon, in the event of her death the title thereto becomes vested in the husband, subject to the lien of the mortgage.

ID. — ADMINISTRATION UPON HOMESTEAD — JURISDICTION OF SUPERIOR
COURT — ERRONEOUS ACTION — COLLATERAL ATTACK.— The superior court has jurisdiction over the homestead for the purposes specified in section 1475 of the Code of Civil Procedure; and, where the court, from ignorance of fact, inadvertence, or mistake of law, makes an order not authorized by the statute, its proceedings, however erroneous, are not without jurisdiction, and cannot be collaterally attacked.

ID.—FAILURE OF RECORD TO DISCLOSE FACT OF HOMESTEAD—ACTION OF
ADMINISTRATOR—JURISDICTION TO ORDER SALE.—Where the record of administration does not disclose the fact that there was a homestead upon the land administered upon, it has jurisdiction upon the face of the record to order a sale of the land to pay liens thereupon and ex-penses of administration; and, where the administrator, who had the title to the homestead, failed to disclose his interest therein, and pe-

titioned the court for such order of sale, he cannot question the juris-
diction of the court to make such order.

ID.—DELAY IN BOND OF ADMINISTRATOR—PRIOR LETTERS AND OATH OF
OFFICE—NEW LETTERS NOT REQUIRED—VALIDITY OF SALE.—The fact
that an administrator did not present his bond for approval until several
days after the issuance of letters to him, and the taking of the oath of
office, does not require the issuance of new letters after the bond is given,
nor vitiate proceedings for the sale of land instituted by him subse-
quently to the approval of the bond.

ID.— DEFECTS IN PROCEEDINGS FOR SALE—VACATION OF ORDER—IRREGU-
LAR ORDER AND BOND.—Where the court has once acquired jurisdiction
to order a sale of real estate, any defects, errors, or irregularities in the
proceedings, in the exercise of its jurisdiction, however gross, cannot
render the order of sale invalid; and the fact that the order first made
was vacated, and that the land was sold under a subsequent order en-
tered without any new order to show cause, or any continuance, and
that the bond was given under the first order, and none was given under
the second order, will not vitiate the sale as against a collateral attack.

ID.—ESTOPPEL OF OWNER TO QUESTION TITLE OF PURCHASER—RETENTION
OF PURCHASE MONEY— VOID SALE.— Where the administrator, who
petitioned for the sale, had title to the land, but asserted in the probate
proceedings that the title to the land was in his deceased wife, and, after
procuring the sale thereof, received the purchase money and applied it
to the payment of a valid lien thereon, for which he was personally
liable, and to the payment of the funeral expenses and costs of adminis-
tration which he had incurred, and conveyed the property to the pur-
chaser, and put him in possession, he is estopped to question the title
of 'the purchaser, while retaining the purchase money, even though the
proceedings for the sale may have been void for want of jurisdiction.

ID.—PURCHASE FROM ESTOPPED OWNER—KNOWLEDGE OF FACTS.—A plain-
tiff who purchased the title of an owner who is estopped to claim
title as against the defendant, with knowledge of the facts upon which
the estoppel is based, is in no better situation than his grantor, and is
bound by the estoppel.

ID.—QUIETING TITLE—FINDINGS—STIPULATED FACTS—GENERAL FINDING
—CONCLUSION OF LAW—REVERSAL UPON APPEAL.—A general finding
in an action to quiet title, to the effect that plaintiff is the owner and
that the claim of the defendant is without right, is a conclusion of law,
where all the facts respecting the title are embodied in a stipulation,
which the court adopts as a finding; and, in such case, the appellate
court may reverse the judgment, and order judgment for the defendant,
upon the findings, when the stipulated facts warrant such reversal.

APPEAL from a judgment of the Superior Court of
San Diego County.   GEORGE PUTERBAUGH, Judge.

The facts are stated in the opinion.

*McNeally & Whitehead,* for Appellant.

Plaintiff's grantor, and therefore plaintiff, is estopped,

on the principle that a party, though ignorant of his rights, who induces others equally ignorant, by his active interference, to pursue a particular course, will be estopped to deny rights acquired thereunder, and on a sale of land, the person receiving the money is estopped to deny that his title passed by the sale. (*Maple* v. *Kussart*, 53 Pa. St. 349; 91 Am. Dec. 214; *Storrs* v. *Barker*, 6 Johns. Ch. 166; 10 Am. Dec. 316; *Davis* v. *Davis*, 26 Cal. 43; 85 Am. Dec. 157; *Reis* v. *Lawrence*, 63 Cal. 129; 49 Am. Rep. 83; *Rice* v. *Bunce*, 49 Mo. 231; 8 Am. Rep. 129; *Nelson* v. *Kelly* (Ala.), 8 So. Rep. 690; *Cook* v. *Finkler*, 9 Mich. 131–33; *Jordan* v. *Stevens*, 51 Me. 78; 81 Am. Dec. 556; *Stevens* v. *NcNamara*, 36 Me. 176; 58 Am. Dec. 740; *Horn* v. *Cole*, 51 N. H. 287; 12 Am. Rep. 111; *Dickerson* v. *Colgrove*, 100 U. S. 578; *Kirk* v. *Hamilton*, 102 U. S. 68; *Penn* v. *Heisey*, 19 Ill. 295; 68 Am. Dec. 597; *Deford* v. *Mercer*, 24 Iowa, 118-22; 92 Am. Dec. 460; *Dunlap* v. *Thomas*, 69 Iowa, 358; Freeman on Void Judicial Sales, sec. 50; *Brant* v. *Virginia etc. Co.*, 93 U. S. 336.) Ignorance of the law with knowledge of the facts cannot be generally set up as a defense; and it is the rule of equity that ignorance of one's legal rights does not take the case out of the rule, where the circumstances would otherwise create an equitable bar to the legal title. (*Storrs* v. *Barker, supra; Maple* v. *Kussart, supra; Reis* v. *Lawrence, supra; Rice* v. *Bunce, supra; Nelson* v. *Kelly, supra; Jordan* v. *Stevens, supra; Davis* v. *Davis, supra;* Civ. Code, secs. 1576, 1578; *Trigg* v. *Read*, 5 Humph. 529; 42 Am. Dec. 447.) Parties and privies are bound by estoppel. (3 Washburn on Real Property, sec. 51; Tiedeman on Real Property, sec. 731.) Plaintiff is not a *bona fide* purchaser without notice, as the proposition to pay five dollars for the quitclaim deed was made by him to Bell, who told him that he had already sold the land to defendant.

*Cassius Carter*, and *Withington & Carter*, for Respondent.

A court cannot administer a homestead. (Code Civ. Proc., sec. 1474; *Tompkins' Estate*, 12 Cal. 125; *James'*

*Estate,* 23 Cal. 416; *Orr's Estate,* 29 Cal. 101; *Busse's Estate,* 35 Cal. 310; *Schadt* v. *Heppe,* 45 Cal. 437; *Flege* v. *Garvey,* 47 Cal. 377; *Croghan's Estate,* 92 Cal. 371; *Sheehy* v. *Miles,* 93 Cal. 288; *Phelan* v. *Smith,* 100 Cal. 158.) Letters issuing before the bond is given are void, and the subsequent bond, without reissue of letters, did not cure the defect. (Code Civ. Proc., sec. 1388; *Hamilton's Estate,* 34 Cal. 469; *Pryor* v. *Downey,* 50 Cal. 388; 19 Am. Rep. 656; *Staples* v. *Connor,* 79 Cal. 14; *Wier* v. *Mead,* 101 Cal. 125; 40 Am. St. Rep. 46.) The petition for the sale of the land is void, because it does not disclose what portion of the personal property remained undisposed of, a statement of what was due on family allowance, a sufficient and separate statement of charges of administration, a statement if the alleged realty be community or separate property, a sufficient and separate statement of the debts of the estate, nor the condition of the real estate. (*Townsend* v. *Gordon,* 19 Cal. 208; *Haynes* v. *Meeks,* 20 Cal. 288; *Smith's Estate,* 51 Cal. 563; *Boland's Estate,* 55 Cal. 310; *Wilson* v. *Hastings,* 66 Cal. 243; *Kertchem* v. *George,* 78 Cal. 597.) The sale was unauthorized because the order of sale first made was vacated, and the second order was made without continuance or order to show cause, and the bond referred to the first order, which fixed the liability of the sureties. (Code Civ. Proc., secs. 1389, 1538, 1539; *Townsend* v. *Tallant,* 33 Cal. 45; 91 Am. Dec. 617; *Hill* v. *Den,* 54 Cal. 23; *Hughes* v. *Den,* 85 Cal. 390; 20 Am. St. Rep. 232; *Fitch* v. *Miller,* 20 Cal. 352; *Smith* v. *Westerfield,* 88 Cal. 375; *Neary* v. *Godfrey,* 102 Cal. 341; *Long* v. *Superior Court,* 102 Cal. 452.) Bell was not estopped from claiming title as against defendant, as he knew not the effect of the homestead declaration. (Bigelow on Estoppel, secs. 592, 949–60; *Baldwin* v. *Richman,* 9 N. J. Eq. 394; *Gove* v. *White,* 20 Wis. 425; *Clinton* v. *Haddam,* 50 Conn. 85; *Davis* v. *Davis,* 26 Cal. 44; 85 Am. Dec. 157; *Follansbee* v. *Parker,* 70 Ill. 11; *Tillotsen* v. *Mitchell,* 111 Ill. 519; *Boynton* v. *Braley,* 54 Vt. 92.) He had no intent to deceive. (*Boggs* v. *Merced Min. Co.,* 14

Cal. 368, 371; *Franklin* v. *Dorland*, 28 Cal. 179; 87 Am. Dec. 111; *Wilson* v. *Castro*, 31 Cal. 440; *Farish* v. *Coon*, 40 Cal. 51; *Stockman* v. *Riverside etc. Co.*, 64 Cal. 59; *Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 195; *Smith* v. *Cremer*, 71 Ill. 186; *Kingman* v. *Graham*, 51 Wis. 233; Hermann on Estoppel, secs. 944, 974, 987; 2 Pomeroy's Equity Jurisprudence, sec. 807.) Though ignorant of the law, defendant was fully acquainted with the title, and knew as much of it as Bell did. (*Davis* v. *Davis*, *supra*; *Flege* v. *Garvey*, *supra*; *Maye* v. *Yappen*, 23 Cal. 309; *Montgomery* v. *Keppel*, 75 Cal. 133; 7 Am. St. Rep. 125; *Burritt* v. *Dickson*, 8 Cal. 113; *Ferris* v. *Coover*, 10 Cal. 591; *Smith* v. *Penny*, 44 Cal. 166; *Gray* v. *Bartlett*, 20 Pick. 186; 32 Am. Dec. 208; *East India Co.* v. *Vincent*, 2 Atk. 83; *Davenport* v. *Turpin*, 43 Cal. 602; *Emeric* v. *Alvarado*, 90 Cal. 447.) The party urging estoppel must have relied on the representations. (2 Hermann on Estoppel, sec. 936; *Burritt* v. *Dickson*, *supra*; *Hardy* v. *Hunt*, 11 Cal. 344; 70 Am. Dec. 787; *McCormick* v. *Springfield etc. Co.*, 66 Cal. 365; *Mitchell* v. *Amador Min. Co.*, 75 Cal. 464; *McCormick* v. *Orient Ins. Co.*, 86 Cal. 260; *Barnhardt* v. *Fulkerth*, 93 Cal. 497; Bigelow on Estoppel, 618, 622; 2 Pomeroy's Equity Jurisprudence, secs. 810, 812.) A mistake of law, and consequent representations, cannot be the ground of estoppel. (*Charlestown* v. *County Commrs.*, 109 Mass. 270; *Speck* v. *Riggin*, 40 Mo. 405; *Boynton* v. *Braley*, *supra*; *Baker* v. *Brickell*, 87 Cal. 329; *McKeen* v. *Naughton*, 88 Cal. 462.) Injury must follow. (*Bowman* v. *Cudworth*, 31 Cal. 153; *Hill* v. *Epley*, 31 Pa. St. 334; *McCune* v. *McMichael*, 29 Ga. 312; *East* v. *Dolihite*, 72 N. C. 562; *Jamison* v. *Miller*, 64 Iowa, 402.) Title to realty does not lie in estoppel. (*Martin* v. *Zellerbach*, 38 Cal. 312; 99 Am. Dec. 365; *Townsend Sav. Bank* v. *Todd*, 47 Conn. 191; *Drury* v. *Foster*, 2 Wall. 24; *Behler* v. *Weyburn*, 59 Ind. 143.)

HAYNES, C.—Action to quiet title. The plaintiff had judgment, and the defendant appeals therefrom, and

from an order denying a new trial. The property in question is the northeast quarter of the northeast quarter of section 35, township 14 south, of range 3 west, San Bernardino meridian, containing forty acres, situated in San Diego county.

On February 10, 1888, Charles U. Bell, being the owner of said premises, conveyed them to his wife, Mary E. Bell, by a grant deed duly executed, for the consideration of eight hundred and fifty dollars. On October 12, 1888, Bell and wife executed to one Flagg a mortgage upon said land to secure their promissory note for two hundred and fifty dollars, due six months after date, with interest at two per cent per month. On January 28, 1890, said Mary E. Bell declared a homestead thereon for the benefit of herself and husband. C. U. Bell's title was by patent from the United States, dated November 24, 1890, and which inured to his wife under his prior grant. All these instruments were recorded at or about their date.

Mary E. Bell died July 1, 1890, seised of said premises, the marriage relation continued to that date, and said land continued to be occupied by the husband and wife as a homestead.

After the death of Mrs. Bell, Mr. Bell was appointed, and on September 10, 1890, qualified, as the administrator of her estate.

In the inventory and appraisement of the estate, returned on September 12, 1890, the only property alleged to belong to her estate was said land, appraised at four hundred dollars, and twelve dollars in money received as rents therefrom. On September 22, 1891, the administrator petitioned the court for an order to sell said land at private sale, and set out in his petition the several items of liabilities, including said mortgage debt, expenses of last sickness and funeral, and expenses of administration accrued and estimated, amounting in all to seven hundred and thirty-seven dollars, and alleging that said land and money was the only property of said estate, that said mortgagee was threatening to foreclose said

mortgage, that he could only realize from the sale of the land the sum of seven hundred dollars, and that a foreclosure of the mortgage would involve large additional costs and expenses. An order of sale was granted, and the land in question was sold to the defendant, Harbison, for said sum of seven hundred dollars; said sale was confirmed on February 12, 1892, the money paid, and said mortgage satisfied, which then amounted, with interest, to five hundred and sixty dollars, and the administrator conveyed the premises to the defendant, and his deed was recorded.

On June 12, 1894, the plaintiff offered said Charles U. Bell five dollars for his personal quitclaim deed of said land, and that offer being declined, ten dollars was offered and accepted, and a quitclaim deed was thereupon executed and delivered to plaintiff, and this action was commenced June 14, 1894, to quiet plaintiff's title under said deed.

The facts in the case were stipulated by the parties, and there is therefore no conflict in the evidence.

By the deed from Bell to his wife she presumptively became seised of the land as of her separate estate (*Taylor* v. *Opperman*, 79 Cal. 468; *Burkett* v. *Burkett*, 78 Cal. 310; 12 Am. St. Rep. 58; *Carter* v. *McQuade*, 83 Cal. 274); and she having filed thereon a declaration of homestead, upon her death the title thereto vested in her surviving husband, subject, however, to the mortgage to Flagg, which was executed by both to secure a promissory note, also executed by both prior to the declaration of homestead.

Under these circumstances the plaintiff contends that the property in question was not subject to administration, and that therefore the court "had no jurisdiction of the subject matter administered upon."

But section 1475 of the Code of Civil Procedure provides that, "if the homestead selected and recorded, prior to the death of the decedent, be returned in the inventory appraised at not exceeding five thousand dollars in value, or was previously appraised as provided in

the Civil Code, and such appraised value did not exceed that sum, the superior court must, by order, set it off to the persons in whom the title is vested by the preceding section"; and also provides for the payment of existing liens thereon.    It is therefore clear that the court has jurisdiction over the homestead for some purposes; and it seems to follow that if the court, from ignorance of the fact that it was a homestead, or by inadvertence, or mistake of law, made an order not authorized by the statute, its proceedings, however erroneous, would not be without jurisdiction, and hence would be valid as against a collateral attack.    Indeed the record of the probate proceedings does not disclose the fact that there ever was a declaration of homestead, and therefore, upon the face of the record, the superior court had jurisdiction. It follows that if the administrator, having failed to disclose his interest in the property under the declaration of homestead, had appealed to this court upon the record of that case, assuming that all other proceedings were sufficient, the jurisdiction of that court must have been affirmed; and, if so, he could not now question it.

But plaintiff (respondent here) further contends that there were jurisdictional defects in the proceedings prior to the petition for the sale of the land, and thereunder specifies several particulars.    Only one of these need be noticed, as the sufficiency of the petition for letters of administration, and of the notice of hearing, are not attacked.    That objection is that the letters were issued and the oath of office taken by the administrator on September 6th, while his bond was dated the 10th and approved on the 11th.    Section 1388 of the Code of Civil Procedure provides that, "Every person to whom letters testamentary or of administration are directed to issue must, before receiving them, execute a bond," etc.    It is true an administrator is not authorized to act until he has given bond, but the mere order of time in which the act of receiving the letters and the act of giving the bond are performed will not affect the validity of his appointment, nor of any act performed

by him after giving the bond, especially where no offi-
cial act was performed, or attempted to be performed, in
the mean time. None of the cases cited by respondent
sustains his contention that in such case new letters of
administration must issue after the bond is given. It
is not claimed that any official act was performed by
Bell before his bond was made and approved.

It is also insisted that the petition for the sale of the
land was insufficient to give the court jurisdiction to
order the sale; that the order first made was vacated
and the order under which the land was sold was after-
ward entered without a new order to show cause, or any
continuance entered, and that the bond required by the
statute was given under the first order, and none under
the second.

It is not necessary to discuss the nature or source of
the jurisdiction of the superior courts in such cases, nor
to restate the requirements of section 1537 of the Code
of Civil Procedure, in reference to petitions for the sale
of real estate by an administrator. These questions, as
well as the other objections above specified, were fully
considered and decided by this court in Bank in the
recent case of *Burris* v. *Kennedy*, 108 Cal. 331, and upon
the authority of that case the jurisdiction of the court
in this case to order the sale must be sustained. There
were many errors and irregularities in the proceeding,
but, as was said in *Burris* v. *Kennedy*, *supra*, "if the court
had jurisdiction, errors in the exercise of it, however
gross, would not render the decision invalid."

But conceding, for the sake of the argument, that the
court had no jurisdiction and that the sale was void, it
would seem to be beyond question that Bell would have
been estopped to claim title to the land as against the de-
fendant, and, if so, the plaintiff claiming under Bell, with
knowledge of the facts, is equally estopped. Bell asserted
in a solemn judicial proceeding that the title to the prop-
erty was in the estate of his deceased wife, and not in
himself. He received the purchase money and applied
it to the payment of the mortgage debt, which was a

valid lien upon the land, for which he, as well as the estate, was liable, and to the payment of the funeral expenses and costs of administration which he had incurred, and, having conveyed the property to the defendant, put him in possession.   There was no surplus arising from the sale.  He was the sole beneficiary, and, upon respondent's theory, the sole owner.   To retain these benefits resulting from the payment of the purchase money by the defendant, and, at the same time, recover the property from him, would be a fraud which a court of equity will not permit.  He had full knowledge of all the facts affecting his title.   His mistake was one of law, as was that also of the defendant; but to permit Bell to retain the purchase money and the property, too, is to give him a very profitable relief from his mistake, while it would visit upon the defendant a severe penalty for the same mistake.   It may be that upon the discovery of his mistake he could have rescinded the sale, but, if so, it could only have been upon full restoration of the purchase money.

It is conceded in the stipulation of facts that the defendant saw an abstract of title of the property, and, therefore, had the means of knowing the true state of the title, but he was not a lawyer, and his good faith is not questioned.  He knew that Bell had taken out letters of administration upon the estate of his deceased wife, that this was the only property claimed to belong to the estate, and that the court had recognized it as such in making the order of sale.   Under these circumstances, it would be going far to say that he was guilty of negligence in relying upon what laymen would ordinarily regard as a judicial determination that the land in question was the property of the estate.   Indeed, the court itself seems to have relied upon the solemn representation of Bell that it was the separate estate of his wife. Bell was not injured.   There is no pretense that he did not receive the full value of the property, nor has either he or the plaintiff offered to return to the defendant the purchase money paid.   It was not the receipt of the

money under a mistake of law, but the retention of it while assuming to convey the land to another by Bell, and the assertion of title by the plaintiff, with knowledge of the facts, that constitutes the fraud upon the defendant and creates the estoppel.

In *Goodman* v. *Winter,* 64 Ala. 410, 38 Am. Rep. 13, a tenant for life sold and conveyed the premises, the sale and conveyance purporting to pass the fee. It was held that the alienation passed only the particular estate, and had no operation on the estate in remainder, but it was held that "if the remaindermen were adults, and accepted a part of the purchase money as compensation for the estate in remainder, they would, in a court of equity, be estopped from asserting their legal estate, and the court would compel them to convey to the purchaser, or bar them from asserting their legal title against him. The acceptance of a part of the purchase money as compensation for the remainder would be a ratification and adoption of the unauthorized alienation and conveyance. . . . . It is a plain principle of justice, of right, and of law that a man cannot accept the benefits and reject the burdens of a transaction."

A stronger case, in some of its circumstances, than the one at bar is that of *Robertson* v. *Bradford,* 73 Ala. 116. There, the intestate died seised of the premises, leaving as his only heir at law a daughter, then a minor of tender years. The administrator obtained an order to sell, and sold the house and lot, and applied the proceeds to payment of the debts of the decedent and the maintenance of the child. The order directing the sale was void for want of jurisdiction. The daughter, while a minor, married, and by her husband as next friend brought an action of ejectment to recover the premises, whereupon the grantee of the purchaser, the daughter having then attained majority, filed a bill to enjoin the prosecution of the ejectment case. It was held that the sale was a nullity, but the purchaser having paid the value of the premises, and the proceeds having been applied to the payment of debts against the estate and

the maintenance of the appellant in her helpless infancy, thus relieving the personal estate, and restitution not having been tendered or intended, she was estopped in a court of equity from asserting her legal title to the prejudice of the purchaser or his privies. The court further said: "There is no principle of law better settled, or resting on wiser considerations of public policy and higher considerations of justice, than that no person who has received and retains the fruits of a judicial proceeding can be heard to assail it, either for irregularity or illegality, to the prejudice of others who have in good faith relied and acted upon it as valid. In the application of this principle it is not of importance that the proceeding is void because of a want of jurisdiction in the court entertaining and sanctioning it. The foundation of the principle is that parties cannot act upon and adopt such parts of a transaction as may be favorable and beneficial to themselves, and, at the same time, repudiate it so far as it may involve them in corresponding duties to others who have yielded the right and advantage to them."

In *Deford* v. *Mercer*, 24 Iowa, 118, 92 Am. Dec. 460, it was held, Dillon, C. J., writing the opinion, that where heirs, after arriving at age, with full knowledge of all the facts and in the absence of fraud or mistake of fact, receive and retain the purchase money arising from the sale by their guardian of their interest in certain lands, they are thereby estopped from questioning the validity of such sale, and that this principle is not limited to cases of voidable sales, but extends to those that are void. (See, also, Freeman's Void Judicial Sales, sec. 50, and cases there cited.)

These cases are clearly distinguishable from *Biddle Boggs* v. *Merced Min. Co.*, 14 Cal. 279, 368, and *Davis* v. *Davis*, 26 Cal. 23, 85 Am. Dec. 157, cited and relied upon by respondent. There, the effect, if the alleged estoppel had been sustained, would have been to deprive the party of his property without compensation, because of acts or declarations made in ignorance of their rights,

and upon which the opposite party should not have relied. Those were cases of estoppel strictly so called; while the case at bar and the other authorities before cited are treated of by Bigelow as "*quasi* estoppels"; or, as stated by Mr. Justice Field, in *Brant* v. *Virginia Coal etc. Co.*, 93 U. S. 326, 336: "There are undoubtedly cases where a party may be concluded from asserting his original rights to property in consequence of his acts or conduct, in which the presence of fraud, actual or constructive, is wanting; as where one of two innocent persons must suffer from the negligence of another, he through whose agency the negligence was occasioned will be held to bear the loss; and where one has received the fruits of a transaction, he is not permitted to deny its validity whilst retaining its benefits. But such cases are generally referable to other principles than that of equitable estoppel, although the same result is produced." The second of these cases, the learned justice says, "is the application of the doctrine of ratification or election."

That the plaintiff, having purchased with knowledge of the facts, is in no better situation than his grantor, requires neither discussion nor citation of authorities. He was expressly informed by Bell that the defendant had bought and paid for the property, and that he, Bell, would prefer to give him a deed if he knew where to find him. He was not a purchaser in good faith. The price paid for the quitclaim, though sufficient as a consideration between him and Bell, indicates very clearly that he was speculating in a small way upon the supposed misfortunes of another. He understood he was purchasing this lawsuit, which he commenced two days thereafter, and having had such enjoyment as it afforded, he cannot reasonably complain if he gets no more.

The first finding is, "that all and singular the allegations of the complaint are true." These allegations are, that plaintiff is the owner, and that defendant's claim is without right. But all the facts were embodied in a stipulation, and in the second finding the court, by ref-

erence, adopted the stipulation as a finding. This stipulation set out the probate proceedings, and admitted that plaintiff had notice of all the facts alleged by the defendant, except as to the personal representations as to title made to him by the administrator and his counsel. The first finding was therefore not justified by the evidence, if it be regarded as a finding of fact. But the facts being conceded by the plaintiff, and all embodied in the findings, the conclusions that the plaintiff is the owner, and that the defendant's claim is without right, are conclusions of law. For example: If a jury be called, and the parties, instead of calling witnesses to prove disputed facts, present a written stipulation containing all the facts, the jury would be dismissed, because there is no disputed fact to be determined by them; the sole question being one of law arising upon the conceded facts. In *Niles* v. *Edwards*, 90 Cal. 10, 13, it was said: "There is a finding that defendant did not at any time convert the stock. This is evidently a conclusion of the court from the special facts found. If there had been no other finding, this would probably be regarded as the ultimate fact; but, in the connection in which it is here found, it is simply conclusion of law, and must be so held."

The judgment and order appealed from should be reversed, with directions to the court below to enter judgment for the defendant upon the findings, enjoining the plaintiff from asserting title to the premises under his said quitclaim deed.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, with directions to the court below to enter judgment for the defendant upon the findings, enjoining the plaintiff from asserting title to the premises under his said quitclaim deed.

McFarland, J., Temple, J., Henshaw, J.