[Civ. No. 1041. First Appellate District.—June 15, 1912.]

MARY C. BAGLEY, Appellant, v. THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants; SOLOMON BLOOM et al., Respondents.

WILLS—SALE OF LAND UNDER POWER WITHOUT NOTICE—CONFIRMATION —LONG DELAY BY HEIR—PLEA OF WANT OF KNOWLEDGE—STATUTE OF LIMITATIONS.—A private sale of real estate under a power given by the will to the executors made without notice, which was reported to and confirmed by the probate court, is not subject to collateral attack, as against the purchaser by an heir, made thirty-three years after the confirmation and nearly twenty years after such heir had ceased to be a minor. A plea of want of actual knowledge of the sale until three years before the commencement of the action cannot justify the long delay of the heir in bringing the action. The statute of limitations embodied in sections 343 and 1573 of the Code of Civil Procedure had long run in favor of the purchaser at such sale before such attack.

ID.—BURDEN UPON HEIR TO EXCUSE IGNORANCE OF PROCEEDINGS IN FATHER'S ESTATE—PUBLIC RECORDS—LEGAL DUTY TO INQUIRE—PROTECTION FROM BAR OF STATUTE DISALLOWED.—The burden is upon the heir to excuse ignorance of the proceedings in the father's estate which were matters of public record; and it was the heir's legal duty, at least after attaining majority, to inquire concerning them, which inquiry would have resulted in the discovery that the property was sold for its full value by the executors and was confirmed by the court; and where, with full means of knowledge of all the facts, the heir delayed nearly twenty years after reaching majority before commencing suit, no court, with proper regard for vested interests, should allow the want of actual knowledge by the heir of

the adverse claims to operate, under such circumstances, to protect the heir from the bar of the statute.

ID.—BAR OF STATUTE APPLICABLE TO VOID OR VOIDABLE SALES.—The bar of the statute is held to be equally applicable to void sales as well as voidable sales made and confirmed by order of the probate court.

ID.—QUESTION AS TO VALIDITY OF EXECUTOR'S SALE WITHOUT NOTICE CONCLUDED BY DECREE OF CONFIRMATION—CONSTRUCTION OF WILL.— The question whether the executors, by reason of the private sale made by them under the will, without notice, did or did not exercise the power conferred upon them by the will, was determined by the court in its solemn decree of confirmation as having been made according to the provisions of the will; and it cannot be litigated again in this collateral proceeding by the heir. The court had jurisdiction to determine that such sale was valid under the terms of the will; and its construction of the will is no longer open to question.

ID.—TIME OF TESTING VALIDITY OF SALE IMMATERIAL—SALE NOT· COL-LATERALLY IMPEACHABLE FOR MERE IRREGULARITIES.—If the sale is to be tested as of the time of making it, the statute then expressly provided that when authority is given by the will to sell property, it may be sold by the executor at public or private sale and without notice, as the executor may determine, subject to confirmation by the court. If it be tested as of the time of the death of the testator, it only required notice, unless the will otherwise provides, and it is held that under a reasonable construction of its language it did otherwise provide. It is also sustained · by respectable authorities that want of notice of the sale is a mere irregularity which may render the sale directly voidable, but not collaterally impeachable.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

John Hubert Mee, for Appellant.

Stoney, Rouleau & Stoney, for Solomon Bloom et al., Respondents.

Olney, Pringle & Mannon, for Margaret Jane Walker, Respondent.

A. H. Redington, for W. P. Redington and Ada L. Redington, Respondents.

Solomon Bloom, for David C. Bloom, Respondent.

Edwin T. Cooper, for James H. Bennett, Respondent.

BURNETT, J.—The action was brought to quiet title to certain real property in San Francisco and the judgment in favor of defendants was rendered upon an agreed statement of facts. It appears that, on November 9, 1869, one Charles F. Hamilton and Monroe Greenwood became the owners of the premises by virtue of a deed from the city and county of San Francisco. Hamilton died on November 14, 1872, leaving a will, by which he disposed of all of his personal property and directed, in a codicil thereto, that his executors sell all of his real property in the city and county of San Francisco and invest the proceeds thereof in United States government bonds for the benefit of his widow, Mary C. Hamilton, and his only child, Mary E. Hamilton, now Mary C. Bagley, plaintiff herein. The will was admitted to probate on December 3, 1872, and the executors, acting under the authority contained in said codicil, proceeded, on March 3, 1875, to sell the real property at private sale and without any notice to the public. The executors rendered to the court a proper return and account of the sale, showing that they had sold to Monroe Greenwood, for the sum of $3,991, the various tracts of land described in the return, and they prayed for an order of confirmation. At the hearing of the return, on March 19, 1875, after proper notice given, the court appointed Timothy D. Reardon attorney to represent the minor heir in the proceeding and made its decree, adjudging that "said sales were duly made under the powers conferred on said executors under the will of deceased, and that the same are hereby confirmed, approved and declared valid, and said executors are hereby authorized and empowered to execute conveyances of said land to said purchaser upon receiving the purchase price aforesaid." The court found that "said sale was at private sale and no notice of the time or place of said sale was given previous to the sale," and "that the executors were fully authorized and empowered by said will to sell the estate of the deceased without any order of court and that said sales were legally made and fairly conducted and that the sums bid for said lots

were not disproportionate to the value thereof and that a sum exceeding such bids by at least ten per cent cannot be obtained.'' A deed of the interest of said estate to Monroe Greenwood was executed by the executors on the twenty-fifth day of March, 1875, and recorded in the office of the county recorder on April 2, 1875. The defendants thereafter, by payment of what was considered the full value of said property and without knowledge of any claim of plaintiff, succeeded to all the right, title and interest of Greenwood in and to the premises in controversy. On April 29, 1875, a decree of final distribution was made in the estate of Hamilton, which, after distributing certain personal property not involved herein, distributed all of the rest, residue and remainder of the property of the decedent, whether then known or discovered, to the widow of deceased and plaintiff herein, share and share alike, no specific mention being made in said decree of any real property. A certified copy of said decree was recorded the same day in the county recorder's office. Monroe Greenwood and his successors in interest have paid all taxes levied or imposed upon the property and also all street assessments.

With the exception of the pieces claimed by W. P. Redington, George M. Rolph and Margaret Jane Walker, the property involved has at all times been vacant, open, unfenced, uncultivated and unused. On December 1, 1907, W. P. Redington and George M. Rolph inclosed by a substantial fence the land claimed by them, and between the first day of July and the first day of November, 1907, Margaret Jane Walker built substantial improvements upon the lot claimed by her, of the value of $11,000, but these improvements were made without the knowledge or consent of plaintiff. Plaintiff made no claim to any of the property until February 1, 1905, and since that date she has asserted her right to an undivided one-fourth interest therein. As to her claim, the various defendants had no knowledge other than such knowledge as was imparted by the public records of the various documents set forth in the agreed statement of facts. At the time of the said probate sale plaintiff was of the age of four years. She reached her majority in 1889, and she brought this action nineteen years thereafter, to wit, on the eleventh day of January, 1908.

The answers denied plaintiff's title, averred ownership in defendants, pleaded the statute of limitations as embodied in sections 318, 343 and 1573 of the Code of Civil Procedure, set up the facts in reference to said probate sale and presented also the defense of laches and estoppel.

All the various contentions made and argued by counsel in their exhaustive briefs revolve about the vital consideration as to the legal effect of the said probate sale made by the executors to Greenwood. In fact, appellant's cause is grounded upon the proposition that "the attempted sale in probate to Monroe Greenwood was a nullity for the reason that it was made at private sale and without notice as required by law." The basis for the contention is that the law in force at the time of the death of Hamilton controlled the proceeding and that its mandate required the executors to give notice of the sale. Section 177 of the probate act, [Stats. 1851, p. 470], in effect at that time, November 14, 1872, directed that "If the testator shall make provision by his will, or designate the estate to be appropriated for the payment of his debts, the expenses of administration or family expenses, they shall be paid according to the provisions of the will and out of the estate thus appropriated so far as the same may be sufficient," and the following section, 178, provided that "When such provision has been made, *or any property directed by the will to be sold,* whether for payment of debts, or expenses, or for any other purpose, the executor or administrator with the will annexed may proceed to sell without the order of the probate court, but *he shall be bound,* as an administrator, *to give notice of the sale,* and to return accounts thereof to the court, and to proceed in making the sale in all respects as if it were made under the order of the court, *unless there are special directions given in the will, in which case he shall be governed by such directions;* but in all cases, no sale shall be valid unless confirmed by the court under the rules prescribed in cases of sales of real estate by an administrator." The clause of the will involved herein is: "And I declare it to be my desire that my executors within a reasonable time, and when they think it advisable to do so, to sell all my real estate in the city of San Francisco, and invest the proceeds from such sale in United States government bonds." It is contended that this does not amount to a *direction* for the sale of any real

property, and, since there is no provision in the will for the payment of debts, expenses of administration or family allowance, the case is not brought within the exception that obviates the order of sale by the court and the notice required by the statute; or, at any rate, if said language of the will is construed as equivalent to a direction to sell, it was still necessary to give the proper notice to make the sale valid.

Against this view thus generally stated are opposed various contentions of respondents, among them, that the action is barred by section 1573 of the Code of Civil Procedure; that, having received the purchase money for the said probate sale, appellant is deemed to have ratified the proceeding and it is now too late for her to question it; that the failure to give notice of said sale is not a defect that can be taken advantage of in a collateral attack; that the law in effect at the time of sale and not that at the time of the death of the testator applies, and under said law no notice was required, and that, under a fair construction and reasonable application of said section 178 of the probate act, as it stood in 1872, the sale must be held to be regular and valid.

Said section 1573 of the Code of Civil Procedure reads as follows: "No action for the recovery of any estate sold by an executor or administrator, under the provisions of this chapter, can be maintained by any heir or other person claiming under the decedent, unless it be commenced within three years next after the settlement of the final account of the executor or administrator. An action to set aside the sale may be instituted and maintained at any time within three years from the discovery of the fraud, or other grounds upon which the action is based." Section 1574, following, provides that "The preceding section shall not apply to minors or others under any legal disability, to sue at the time when the right of action first accrues; but all such persons may commence an action at any time within three years after the removal of the disability."

As we have seen, nineteen years elapsed after plaintiff ceased to be a minor before she brought the action, and this was thirty-three years after said probate sale. It thus appears that plaintiff is unmistakably brought within the clearly expressed inhibition of said statute of limitations, unless it can be said that, by reason of the want of actual knowledge of

the claim of respondents, the bar of the statute does not oper-
ate against her. The portion of the stipulated facts in point
is as follows: ''The said Monroe Greenwood and his grantees
and his successors in interest after him claimed ownership of
said real property under said will and probate proceedings
and other documents hereinbefore set out, but as to said claims
plaintiff had no knowledge other than such knowledge as
can be imputed to her from the existence of the records here-
inafter set out and referred to . . . until the commencement
of this action.'' It might be claimed, therefore, that, since
plaintiff acquired knowledge of the probate sale within three
years of the beginning of the action, this circumstance con-
stitutes one of the ''other grounds upon which the action is
based,'' and that she is thus brought within the exception
provided for in said section 1573. But the want of actual
knowledge of the sale does not justify her long delay in bring-
ing the action. The burden was obviously cast upon her to
excuse her ignorance of the proceedings in her father's estate.
They were matters of public record, and it was her legal duty,
at least after reaching her majority, to make inquiry concern-
ing them. If she had so inquired, the result would have been
the discovery of the fact that this identical property was sold
in 1875, for its full value, by the executors of her father's es-
tate, and she would have known that, in order to maintain
an action to recover said property or any portion of it, she
must proceed not later than 1892. The situation, in brief, is
simply this: With the means of knowledge available and with-
out offering any excuse for her failure to make inquiry, plain-
tiff waits for nearly twenty years after reaching her majority,
and then institutes proceedings to set aside a sale made to
an innocent purchaser for value by the executors of her
father's estate in the utmost good faith and by virtue of a
purported power in the will and afterward confirmed by a
solemn decree of the court. No judicial tribunal, with proper
regard for vested interests and that wise public policy which
fosters the stability of titles, should allow her want of actual
knowledge of the adverse claims to operate, under such circum-
stances, to protect her from the bar of the statute. In *Dennis*
v. *Bint*, 122 Cal. 39, [68 Am. St. Rep. 17, 54 Pac. 378], the
action was to recover possession of a tract of land and to set
aside a sale thereof made in probate, and it was stated in the

opinion by Commissioner Britt, referring to the same statute of limitations, that ''It is further claimed that the case is taken from the operation of the statute, by the averment that the grounds of the action were discovered within a year next before the commencement of the suit. Aside from other considerations which may bear on this point, the statement of the complaint is insufficient for the purpose claimed because unaccompanied by any explanation of the failure to acquire knowledge earlier; so as regards the adult plaintiffs, at least.'' If a mere allegation in the complaint of the want of knowledge is insufficient, clearly a stipulation of like import falls short of meeting the requirement of the rule. The chief justice, in his concurring opinion, discusses the matter at length and declares that ''under this section (Code Civ. Proc., sec. 1574) I think it appears from the complaint that the action of the two plaintiffs herein, who were more than three years past their majority when the original complaint was filed, was barred, and that the ruling of the court sustaining the demurrers as to them was correct, and that the judgment as against them should be affirmed upon this ground alone. They are not saved by their allegation that the facts upon which their action is founded came to their knowledge within three years of the commencement of the action, because they offer no explanation or excuse for their ignorance.''

In *Moore* v. *Boyd,* 74 Cal. 171, [15 Pac. 671], it is said: ''For the purposes of the statute of limitations, if the means of knowledge exist, and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry. This rule is applied both in equity (*New Albany* v. *Burke,* 11 Wall. 107, [20 L. Ed. 155]; *National Bank* v. *Carpenter,* 101 U. S. 576, [25 L. Ed. 815], and at law (*Bailey* v. *Glover,* 2 Wall. 349, [22 L. Ed. 636]; *Wood* v. *Carpenter,* 101 U. S. 141, [25 L. Ed. 807]).''

The effect of the corresponding section 190 of the probate act received consideration in the early case of *Harlan* v. *Peck,* 33 Cal. 515, [91 Am. Dec. 653]. The only substantial difference between the language of that section and the provision before us is that the former required the action to be brought within three years next after the *sale* instead of the *settlement of the final account* as now. In the Harlan case the court,

through Mr. Justice Sanderson, said: "Whether this language embraces sales which are made under order of the probate courts which are void for the want of jurisdiction, or only such sales as are merely voidable, is the question. There is nothing in the policy or language of the statute which excludes void sales from its operation. The policy of the statute is to quiet titles to real estate sold by order of the probate courts. In view of that policy merely, there can be no distinction between sales which may be termed void for the want of jurisdiction and those which are voidable only. Nor is there anything in the language of the statute which creates such a distinction. . . . To the phrase in question there is added no qualification, and hence if it restricts the limitation at all it excludes all sales which are not 'according to the provisions of the chapter,' which includes voidable as well as void sales." The authority of this case is recognized in subsequent decisions of the supreme court, and it would probably be admitted as decisive of the controversy were it not for some expressions used in the opinion found in *Gage* v. *Downey,* 94 Cal. 241, [29 Pac. 635], and in *Campbell* v. *Drais,* 125 Cal. 253, [59 Pac. 994]. But those cases in their facts are so dissimilar to the case at bar that they can be of little, if any, assistance here. The distinction is clearly pointed out by respondents, and it is manifest that these cases are not inharmonious with the other decisions of the supreme court.

In the *Gage* case the defendants did not claim under the probate sale at all. They set up a sale to a man by the name of Carlisle, with whom they were not in privity. The sale to Carlisle was unquestionably void, and the contention of defendants was that plaintiff could not recover of them because there had been a void probate sale to a stranger, which sale had remained unattacked for more than three years. The decision is grounded upon the well-known doctrine that the statute of limitations creates a personal privilege that may be waived and that, in order to be available, it must be claimed by one upon whom the privilege is conferred.

While not actually determined by the court, it seems to have been conceded that if the action had been against Carlisle, he might have urged successfully the statute of limitations, the court stating: "Here it is conceded that no title vested in Carlisle under the probate sale, and that the facts exist

which, under this section of the code, deprive plaintiffs of the right to bring an action for the recovery of the land''—that is, as against Carlisle. Appellant calls attention to the fact that in the Gage case, *supra,* the purchaser under the probate sale had not taken possession of the property and that this circumstance was considered of some importance by the court. But it is obvious that the court was considering this particular statute of limitations in connection with the question of title. The purpose was to make the position plain that a void sale of itself could not create, and it would not ripen into, title, no matter how much time had elapsed, but that, under the provisions of the statute, it could be set up simply as a bar to prevent the assertion of title in another. It occurred, however, to the author of the opinion that if possession were taken under a void sale, then the purchaser might assert title in himself. This is true, because occupancy confers a species of title which may be purchased and sold and for the recovery of which an action may be maintained against one having no better title (Code Civ. Proc., sec. 1006; *King* v. *Gotz,* 70 Cal. 240, [11 Pac. 656]); and possession, when adverse, as is well known, may ripen into a perfect title. This accounts for the expression in the opinion: ''It appears that Carlisle never entered into possession of this land under his purchase, and to hold that under the circumstances as here depicted the interest of the heirs was transferred to Carlisle would be novel in the extreme; but we do not deem it necessary to discuss that question.'' The case does not decide that in order to take advantage of this statute of limitations the purchaser must enter into actual possession of the property. This would be adding something that the legislature has not provided. Of course, there may be circumstances where the question of possession would affect the application of the statute, but to agree with appellant's contention here would be to exclude unoccupied land altogether from the operation of said section 1573 of the Code of Civil Procedure. We can find no warrant for this position.

In the Campbell case, *supra,* it was held that the probate sale to one Hewitt was void. He held and occupied the premises for a few days and, on March 11, 1874, he conveyed the land to one Cross, who occupied it till February, 1876, when he conveyed the whole in severalty to one Church, who had

entered into possession of the property and was occupying it
at the time of the trial. While Cross was in possession he
allowed the widow of John A. Campbell, deceased, to build
a house upon a portion of the land and to occupy it with her
minor children, and in 1876 Church married the widow, and
the children continued to live there with Church and their
mother. They were raised and treated by Church substan-
tially as if they had been his own children, and he recognized
their interest in the property and, before the execution of the
mortgage under which appellants claimed, he said to all the
plaintiffs that they owned one-half of the property, and he
told the mortgagee that the children owned one-half and called
his attention to an abstract of title showing that fact, and
the mortgagee thereupon agreed to take the mortgage with
the knowledge that, although it covered the whole title to the
land, yet it probably would be good for only an undivided
one-half. All the plaintiffs had attained their majority a little
more than three years, and the final account of the adminis-
tration of the estate of Campbell had been settled more than
three years before the commencement of the action. It was
therefore argued that the action was barred by section 1573
of the Code of Civil Procedure, but the supreme court held
that it had no application, since "plaintiffs had no cause of
action against Church, for he acknowledged their title and was
holding for them as a tenant in common, and they could not
have litigated their title in the foreclosure suit because they
held by a paramount title and not under the mortgagor."

Neither of these cases can be said to favor the addition of
a new element to the said statute or to manifest a purpose on
the part of the supreme court to depart from the plain and
unequivocal language of the legislative intent.

But the contention of appellant in effect is that the exec-
utors, by reason of their failure to give notice of the sale, did
not properly exercise the power committed to them by the will.
This question, however, as already indicated, was determined
by the court in a solemn judgment confirming the sale, and
it cannot be again litigated in this collateral proceeding.
There is no dispute that the statute required the court to de-
termine whether the sale was valid. By virtue of the decree,
whose terms have already appeared, the court did determine
that the sale was legally made and that the executors, in mak-

ing the sale, properly exercised the power conferred upon them
by the will of the deceased. It cannot be doubted that the
court had jurisdiction to render this decree. The will had
been admitted to probate; it contained a direction to the
executors as to the sale of the real property; they had pro-
ceeded to make a sale and had filed in the court a proper re-
turn which, after due notice, came on for hearing. The court
found, it is true, that no notice of the sale was given by the
executors, but the court so interpreted the will that no notice
was required, and appellant now seeks, more than thirty years
thereafter, to reverse that ruling. The only possible question
of controversy before the court was the proper construction
of the will, as to whether it authorized the executors to sell
without notice. The court determined that it clothed the exec-
utors with that power, and if we are to attribute to judgments
their necessary incidents, it must be held that the construction
of the will can no longer be open to dispute. If the decree
showed upon its face that it was necessarily invalid, a differ-
ent question might be presented, but it cannot be declared,
from an inspection of the decree, that the judgment was even
erroneous—much less that there was any want of jurisdiction
on the part of the court. To reach even the conclusion that
the court committed an error in confirming the sale, we must
travel beyond the decree and consider the terms of the will—
in other words, a part of the evidence upon which the court
based its judgment. This is not permitted in a collateral pro-
ceeding. (*Emery* v. *Kipp,* 154 Cal. 83, [129 Am. St. Rep.
141, 16 Ann. Cas. 792, 19 L. R. A., N. S., 983, 97 Pac. 17].)
But if we were to do so the result would be, under well-estab-
lished principles, to leave the judgment undisturbed and un-
affected by this action.

Of course, "all intendments are in favor of the validity of
judgments of courts of general jurisdiction, and the jurisdic-
tion of such courts in rendering a particular judgment is
conclusively presumed to have been acquired unless the record
itself shows to the contrary." (*Morrissey* v. *Gray,* 162 Cal.
638, [124 Pac. 246].)

There would be more plausibility in appellant's contention
if there were no pretense of power to sell conferred by the
will, and her claim would undoubtedly possess merit if such

power were prohibited by law, but no situation of that kind is presented.

The two cases cited by respondents, *Richardson* v. *Butler*, 82 Cal. 174, [16 Am. St. Rep. 101, 23 Pac. 9], and *Zilmer* v. *Gerichten*, 111 Cal. 73, [43 Pac. 408], affirm the principle that is applicable here to the said judgment of confirmation. In the former, the action being to quiet title, one of the contentions was that notice of the probate sale was not posted as required by law, but the supreme court, through Mr. Justice McFarland, said: ''The probate court, in its order confirming the sale, declared that the notice was posted in three public places. Respondent introduced evidence against the objection of appellants, with intent to show that *one* of the places was *not* a public place within the meaning of the code. But surely the court, having jurisdiction of the proceeding, could, within that jurisdiction, find the fact that the place was ʾa public place; and such finding cannot be attacked collaterally.'' Furthermore, we may adopt, as peculiarly appropriate in this case, the following language of the court: ''It may be remarked that there is no pretense that the sale under which appellants claim was in fact fraudulent, or without adequate consideration, or in any way unfair. To the objections made to it may well be applied that often abused word 'technical'; and we do not think they are sufficient to overturn, for want of jurisdiction, the solemn judgment of a court, or to destroy a title to realty honestly acquired.''

In the Zilmer case, *supra,* it is said that ''Conceding, however, that the proceeding for confirmation of the sale was irregular as claimed, and that notice of the sale was not published for the time required by the order of the court, yet these irregularities or errors in the exercise of unquestionable jurisdiction would not invalidate the sale nor the administrator's deed to the extent of making them vulnerable to the collateral attack made upon them in the court below. Jurisdiction existing, any order or judgment is conclusive in respect to its own validity in a dispute concerning any right or title derived through it or anything done by virtue of its authority.''

The vice of appellant's argument, let it be repeated, is in the assumption that the court confirmed the sale in the face of an affirmative showing that the notice required by the statute was

not given, whereas the truth is, the court determined that, under the provisions of the will, no notice was required, and thus was effect given to the intent of the testator as found by the court. This judicial construction of the will is as effective now as it would be if it had been made in a decree of distribution instead of an order confirming the probate sale.

In the cases cited by appellant there was either a direct attack upon the judgment or else it appeared that the court had no jurisdiction either of the person or of the subject matter, and hence the judgment was void.

In *Townsend* v. *Tallant*, 33 Cal. 45, [91 Am. Dec. 617], the order to show cause why the sale should not be made was not published *four* weeks as required by the statute; the statute indubitably required such publication, and the probate court, in its order confirming the sale, expressly found that the order to show cause had been duly advertised for *three* weeks. It was held that the order confirming the sale was without jurisdiction and could be collaterally attacked. The court said, through Mr. Justice Shafter: ''The sale being void, there was no subject matter upon which the order of confirmation could act. If the court had no jurisdiction to order the sale it had none to confirm it. Where there is no power to render a judgment or to make an order, there can be none to confirm or execute it; or none, at least, without the help of legislation.'' The order to show cause is the process in this probate proceeding, and it is manifest that a compliance with the mandate of the statute as to its service is as indispensable to the jurisdiction of the court as an obedience to the requirement of the law as to jurisdiction of the person where reliance is had upon the publication of summons in an ordinary action.

So in *Smith* v. *Olmstead*, 88 Cal. 582, [22 Am. St. Rep. 336, 12 L. R. A. 46, 26 Pac. 521], there was a sale under a power conferred by the will of one Z. B. Smith, deceased, but it was properly held that the sale did not transfer an interest upon which the will did not operate; that the pretermitted child succeeded ''immediately by operation of law to the same portion of the testator's real property as if no will had been made; that as to such portion the testator is to be regarded as dying intestate, and its succession is directed by law, and not by the will. And as a necessary legal consequence of this contention, it would follow that every provision in the will

directly or indirectly attempting to dispose of such portion of
the estate, except for the discharge of the decedent's debts, or
other charges accruing in due course of administration, is in-
operative as against such child." The court concluded that
"the order of confirmation imparted no validity to the sale
in this case; it only adjudicated that the power contained
in the will had been followed and that the sale was for a fair
price." If we accept this as a correct statement of the effect
of the order of confirmation, it is manifest that it sets at rest
the disputed point here, as the vital question is whether the
"power contained in the will has been followed."

Again, it would seem that the manner in which the power of
sale shall be exercised, in other words, the mode of procedure
for the execution of the authority conferred on the executors,
should be determined by the provisions of the statute in force
at the time of the sale rather than by the law as it existed
at the time of the death of the testator. The position of ap-
pellant is that at the time of the death of Hamilton the title
to the real property vested in his devisees, subject only to such
conditions of administration as the statute imposed at that
time, and that the legislature could not enlarge those condi-
tions or divest or impair the title of said devisees by subse-
quent legislation. The theory is sound, but it is believed that
it has no application to the situation here. In brief, whether,
technically speaking, there was or not an equitable conver-
sion of the real into personal property at the time of the death
of the testator, it is at least true that the devisees took the
real estate subject to the power of sale vested in the executors,
and the amendment of the statute left this interest unaffected,
but dispensed with the necessity for giving notice of the sale,
thereby simply changing the form of procedure for the en-
forcement of a right or the exercise of a power that was
created by the will. The law, as it existed at the time of the
sale, provided that "When property is directed by the will
to be sold, or authority is given in the will to sell property,
the executor may sell any property of the estate without order
of the court, and at either public or private sale, and with or
without notice, as the executor may determine; but the exec-
utor must make return of such sales, as in other cases; and
if directions are given in the will as to the mode of selling,
or the particular property to be sold, such directions must be

observed. In either case no title passes unless the sale be con-
firmed by the court."

The case in principle is not unlike *Murphy* v. *Farmers' etc.
Bank*, 131 Cal. 115, [63 Pac. 368, 731], where it was held that
"A subsequent statute permitting a mortgage of the unad-
ministered estate to pay the debts, passed after the death,
does not create a new burden, nor interfere with the vested
rights of the heirs, but provides merely for a change in the
form of the burden, which is within the power of the legisla-
ture."

The cases cited by appellant, as pointed out by respondents,
relate to statutes which increased the instances in which the
power of sale might be exercised or enlarged the powers of
the executor conferred by the will. An example is afforded
in the leading case of *Brenham* v. *Story*, 39 Cal. 179. At the
time of the death of the intestate in that case the law allowed
the sale of the real property of an estate only for the pur-
pose of paying the debts of the deceased, for the support of
the family or for the expenses of administration. While the
estate was being administered the legislature passed a special
act authorizing the administrator, at his discretion, to sell any
portion of the real estate of the deceased held or owned by
him at the time of his death as in the judgment of the adminis-
trator would best promote the interest of those entitled to the
estate. A sale under this act was held to be invalid, for the
obvious reason that it impaired the vested rights of the heirs.
The court said: "Upon the death of the ancestor the heir be-
comes vested at once with the full property subject to the
liens we have mentioned; and subject to these liens and the
temporary right of possession of the administrator, he may
at once sell and dispose of the property, and has the same right
to judge for himself of the relative advantages of selling or
holding that any other owner has. His estate is indefeasible,
except in satisfaction of these prior liens, and the legislature
has no more right to order a sale of his vested interest in his
inheritance, because it will be, in the estimation of the admin-
istrator and the probate judge, for his advantage, than it has
to direct the sale of the property of any other person acquired
in any other way."

But, conceding that the sale must be tested by the law of
procedure as it existed at the time of the death of Hamilton.

still, under a reasonable construction of the power of sale conferred by the will, it cannot be held that the sale was invalid. The act, as it was in 1872, provided, as we have already seen, that the executor was bound to give notice of the sale "unless there are special directions given in the will, in which case he shall be governed by such directions." While there are no specific directions as to whether the sale shall be with or without notice, it is fairly inferable that the testator intended to leave this for the executors to determine. He expressed his desire that his executors, "within a reasonable time and when they think it advisable to do so," sell the property. The discretion to sell when they should consider it advisable plainly implies an option to sell without the delay that would be caused by giving notice. As to this, the case of *Larco* v. *Casaneuava,* 30 Cal. 560, is somewhat instructive. The land in controversy there was sold under a power conferred by the will as follows: "'I hereby appoint my brother, Francisco Casaneuava, my executor of this my last will, with power to sell, dispose of and convey all my said property, both real and personal, for the benefit of my said sister, without obtaining any order of any court therefor." The law then, as far as notice of the sale is concerned, was the same as in 1872 and there was no more explicit direction in said will as to the manner of sale than in the case at bar. It was held, however, that the sale was valid without regard to a compliance with the provisions of the statute, the court saying: "The language is broad and general, and clearly shows that the intent of the testator was to withdraw his estate from the operation of the probate act and vest in his executor full power to convert in his own way the estate into cash for the benefit of his sister." The specific point that the sale was made without notice does not appear to have been urged, but the record shows that an objection was made to the sale on the ground that there was not shown "a compliance with the law in any respect as to sales by executors," and therefore the deed was void. The logic of the decision, though, necessarily involves the proposition that, under such donation of power to the executor, he is not required to give any notice of the sale. The language of the power here is somewhat different, but it seems equally potent to clothe the executors with authority to sell the real estate at their discretion.

It may be said, finally, that there is respectable authority for holding that the want of notice of the sale is not jurisdictional, and does not invalidate the order of confirmation. In *Blackman* v. *Mulhall,* 19 S. D. 534, [104 N. W. 250], the supreme court of South Dakota held that ''The failure to publish notice for the required time did not render the proceedings void, but only irregular, and this irregularity does not affect the validity of the sale in this collateral proceeding.''

In *McNair* v. *Hunt,* 5 Mo. 309, the supreme court of Missouri declared that, although the law required notice of the sale to be given, yet, in the absence of notice, the sale was merely voidable and could not be questioned in a collateral suit.

In *Matheson's Heirs* v. *Hearin,* 29 Ala. 210, the court declared that a certain sale made by the administrator under a ''purported order of the orphan court was a judicial·sale; and that, although there may be irregularities in it, such as the omission of the administrator to give the notice of it directed by law, it is not void, and cannot be collaterally impeached for such irregularities.''

In *Burris* v. *Kennedy,* 108 Cal. 331, [41 Pac. 458], it is held that, under the statute, the filing of a petition for an order of sale and the giving of notice of the hearing of the petition are jurisdictional and essential to the power of the court to order the sale, but if the court has thus acquired jurisdiction, errors afterward in the exercise of it, however gross, will not render the decree invalid, and that if the court erred in ordering a private sale instead of a public sale, as it ought to have done, this was mere error and did not affect the validity of the sale. Here, as we have seen, no order for the sale was required, and the foregoing case would seem to be authority for the position that the fact of the sale being private, that is, without notice, is not jurisdictional. There is, of course, a distinction between this circumstance and the service of the order to show cause why an order of sale should not be made. The latter is without doubt a jurisdictional matter.

For further discussion of the question of jurisdictional defects reference may be had to the following cases: *Dennis* v. *Winter,* 63 Cal. 16; *Richardson* v. *Butler,* 82 Cal. 174, [16 Am. St. Rep. 101, 23 Pac. 9]; *Smith* v. *Biscailus,* 83 Cal. 344, 359, [21 Pac. 15, 23 Pac. 314]; *Zilmer* v. *Gerichten,* 111 Cal. 73,

[43 Pac. 408]; *Ions* v. *Harbison,* 112 Cal. 260, [44 Pac. 572];
*Matter of Devincenzi,* 119 Cal. 498, [51 Pac. 845].

It is believed that no substantial reason has been or can be
advanced why a court of equity should disturb these titles that
have been unquestioned for so many years, and the judgment
is therefore affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on August 14, 1912.