[Civ. No. 8068. Second Appellate District, Division Two.—October 22, 1934.]

S. R. ROBINSON, Appellant, v. JULIA RAQUET et al., Respondents.

534

William C. Mathes, Alford P. Olmstead, Wendell P. Hubbard and Lloyd Melvin Smith for Appellant.

Murphy & Doherty for Respondents.

WILLIS, J., *pro tem.*—This is an appeal by plaintiff from a judgment that he recover nothing from defendants and from an order after judgment denying a motion to vacate such judgment under the provisions of sections 663 and 663a of the Code of Civil Procedure.

On June 30, 1927, Raymond E. White and his brother Clarence White, were copartners, owning and conducting business under the firm name of Oil Well Manufacturing Company, then in process of incorporation under the same name, in which it was provided that 1,000 shares of capital stock, at $100 par value, were to be issued upon receiving the permit of the state corporation commissioner so to do, one-half thereof to each of said partners. Defendant, respondent herein, Julia Raquet, it is admitted and found, was at the time the agent of Raymond E. White and carried in her name his interest in such firm, and in all the transactions herein acted for him and under his direction as his agent, all parties herein having knowledge of such relationship. White, therefore, is the sole real party defendant.

On the date first mentioned, Julia Raquet and plaintiff entered into a contract in writing, wherein the former agreed to sell to Robinson 125 shares of the capital stock above described, if and when issued under permit, for the sum of $12,500, and Robinson agreed to buy the same and to pay for it as follows: Four thousand dollars in cash "upon the issuance and delivery to him" of said 125 shares of stock, the balance of $8,500 to be evidenced by a nonnegotiable, noninterest bearing note due and payable on or before six years from date thereof, "when and as a dividend or dividends on said One Hundred and Twenty-five (125) shares of stock are declared and paid, and only to the extent, at such time or times, of such dividend or dividends", but with right of the maker to pay in full at any time. It was further agreed that Robinson would deposit with Julia Raquet the said 125 shares of stock and pledge the same as collateral security to said note, under agreement to hold the same as collateral for six years unless the note was sooner liquidated, and at the end of that period Julia Raquet might proceed to sell said stock in liquidation of any unpaid balance on said note, if any was then existing. It is further provided therein that one of the considerations for the execution of this contract of purchase and sale of stock was the

fact that contemporaneously therewith Robinson, the pur-
chaser, had entered into an employment agreement with
the Oil Well Manufacturing Company, the corporation to
which contract reference is made, it being specially provided
that any salary provided for in said employment agreement,
and paid to Robinson, should not be deemed a profit to be
applied on payment of said note. Finally, it was therein
provided, that this contract of purchase and sale and the
contract of employment shall be read together in the event
it became necessary to construe either of said agreements.

The employment contract, executed on June 30, 1927, and
above referred to, provided for the hire of Robinson as a
salaried employee of the corporation, or of the partnership
in the event the permit to issue stock was not obtained, for
a term of five years from July 1, 1927, with salary and duty
provisions set forth at length. Cancellation thereof was
limited to (a) illness of the employee for six or more con-
secutive months, and (b) failure of the employee to devote
his time to the business and to discharge his duties as such
employee. In the last-named event the company might ter-
minate the contract upon sixty days' notice in writing, but
such cancellation should not be deemed to in anywise or man-
ner affect, cancel or abrogate the contract of even date with
Julia Raquet for the purchase and sale of stock, unless the
company should establish, by an award of a board of arbi-
trators, that it terminated said contract of employment for
a good and sufficient cause, not included in any circum-
stances of illness of the employee. And if so established,
or should the employee voluntarily leave the employ of the
company during the term of said agreement, then it is pro-
vided that Julia Raquet might terminate the stock sale con-
tract; and if so terminated, then Julia Raquet should be
obligated only to repay to Robinson such amounts as might
have been received in cash or by way of dividends or profits,
inclusive of undistributed dividends or profits, on account of
the purchase price of said stock or copartnership interest,
and upon such repayment Julia Raquet should be entitled
to the return of the stock described. It is further provided
that should Robinson voluntarily determine to sever his
employment with the company, and should desire to dispose
of said stock, then he should offer in writing to Julia
Raquet the opportunity to purchase said stock at book value

thereof; that in event book value could not be agreed upon the same should be determined by arbitration, and when so determined, either by agreement or arbitration, then Julia Raquet should have a period of sixty days within which to accept or reject such offer, and in case of rejection Robinson was to have unrestrained privilege and right to sell said stock as he might desire.

It should be stated at this point that a similar stock sale contract to that of Julia Raquet was contemporaneously executed by plaintiff and Clarence White, in which the latter likewise, and under the same terms and conditions, agreed to sell to Robinson 125 shares of his 500 shares if and when issued under permit. The appeal in a similar case against Clarence White, and tried along with this action, has been dismissed under stipulation, and we have for consideration only the action against Julia Raquet and Raymond E. White.

In December of 1927 appellant had paid to Raymond E. White the $4,000 required by the stock sale contract with Julia Raquet, and two dividends of $10 each per share have been paid to White, one in December of 1928 and the other in January of 1929, and by him credited on the note to Julia Raquet, such credit being in the sum of $2,500, leaving a balance of $6,000 on the note.

Upon the execution of these contracts appellant began his service with the company in a sale capacity, and later, when permit to issue stock had been given, he was made a director and president of the corporation, in which capacity he served until June 29, 1929, when he was served with written notice of cancellation of the employment contract upon the grounds of failure to devote his time to the company business and failure to properly or otherwise discharge his duties as employee, and upon other specified grounds. The sufficiency of the grounds of cancellation has never been established by arbitration as provided for in such employment contract, and hence under its provisions such cancellation had no effect on the stock sales contract of Julia Raquet. And as it appears that appellant has never voluntarily left the employ of the company, no right to terminate the stock sale contract arose in favor of Julia Raquet; nor was appellant under obligation to offer his

stock interests for sale to her at book value as provided for in said contract.

After receipt of the notice of cancellation, and on or about August 23, 1929, appellant executed and delivered to Julia Raquet and Raymond E. White a promissory note bearing date July 1, 1927, in the sum of $8,500, payable on or before six years after date to Julia Raquet without interest, with provision for crediting dividends received and for deposit of the 125 shares of stock as collateral. This note the respondents retained and still have possession thereof, and on it has been credited the two dividends.

Concurrently with the delivery of said note appellant served on respondents a document entitled "Offer to Perform and Demand for Performance", wherein appellant offered to perform all things required of him by the stock sales contract and wherein he offered the note above described and further offered to pledge the 125 shares of stock as security for said note. Demand is made therein upon respondents to assign and transfer to appellant the 125 shares of stock and to credit on the said note all dividends received on said shares since the date of the stock sales contract. It is therein further stated that on failure to accept this offer and to comply therewith appellant would take such legal steps as necessary to protect his rights under said contract.

On September 26, 1929, appellant commenced action against respondents by the filing of a complaint setting forth three separate causes of action, the first for specific performance of the stock sale contract, the second for damages for breach thereof and the third for damages for conversion of said stock. At the commencement of trial appellant dismissed the third cause of action, and trial proceeded on the first and second causes. Prior to submission of his case by appellant he elected to pursue the second cause of action and abandoned the first cause, and the case was finally submitted for decision on the cause of action for damages for breach only.

In its decision the lower court found that the contracts described had been executed as alleged and set forth; that $4,000 had been paid by appellant to respondents and that $2,500 in dividends had been received by respondents and credited on the contract price of the stock; that on or

about August 23, 1929, appellant executed and delivered the $8,500 note and his demand for the transfer and delivery of the 125 shares of stock; that respondents retained possession of the note delivered but did not then or thereafter issue to or deliver the 125 shares of stock or any part thereof to appellant; that the reasonable value of said stock on August 23, 1929, and until institution of this action was $22,500, or $180 per share. The court then found that appellant had not been damaged or injured by refusal or failure or neglect of respondents to perform the terms or promises or covenants or conditions on their part to be performed, or by any act or neglect or refusal to act or failure to act on the part of respondents.

Upon its findings the court made its conclusion that the failure of Raymond E. White to issue and deliver the 125 shares of stock pursuant to the written demand of appellant "was not a repudiation of the agreement of June 30, 1927", and that such refusal "did not result in any damage to the plaintiff herein. This cause therefore, is an instance of *injuria absque damno*". Further, the court concluded as follows: "Only damages to full proprietary interest or ownership of personal property may be regarded or considered under section 3308 of the Civil Code of the State of California, and by reason of the fact that plaintiff, S. R. Robinson, has shown in this action no evidence of any damage to said full proprietary rights, he should take nothing by his complaint herein and judgment should be for the defendant for his costs herein expended." Judgment was thereafter entered as hereinbefore stated, denying plaintiff any relief, and a subsequent motion for new trial and motion to vacate the judgment and enter another therein in favor of plaintiff for $16,500 on the findings were denied.

On this appeal from the judgment and from the order denying the latter motion appellant assigns two points, namely: First: The defendants breached their contract for the sale of the stock to plaintiff in its entirety, and that plaintiff is entitled to receive full damage for such breach. Second: That the measure of damages is the excess of value of the stock to him over what would have been due to defendants under the contract if it had been fulfilled by them, and that plaintiff was therefore entitled to recover the sum of $16,500.

In the consideration and determination of these points it is first necessary to allocate to its proper station that portion of the decision of the trial court, incorporated among the findings of fact, stating that "it is not true that plaintiff has been damaged", etc., hereinabove more fully set forth, and comprising the last three clauses of specific findings of fact on the second cause of action, numbered 1. This is evidently a conclusion of the court from the facts found and must be considered simply a conclusion of law, misplaced in the decision. This view is confirmed by subsequent conclusions of the court, wherein it embraced within its conclusions of law a conclusion that the failure of defendants to issue the stock pursuant to plaintiff's demand did not result in any damage to him, characterizing the case as an instance of *"injuria absque damno"*. Under circumstances such as are herein presented it is clear that the so-called finding of absence of damage is a mere conclusion of law and should be so classified. (*Ions* v. *Harbison,* 112 Cal. 260, 273 [44 Pac. 572]; *Niles* v. *Edwards,* 90 Cal. 10, 13 [27 Pac. 159]; *Klein* v. *Lewis,* 41 Cal. App. 463, 467 [182 Pac. 789].) Should such declaration of lack of damage or injury be considered as a finding of an ultimate fact, essential to the case to be made by plaintiff, still it must be held that as such finding it would be contrary to the evidence, as the previous findings of probative facts relative to failure to perform the obligations of the contract by defendant dispose of all the facts involved in respect to a breach, and therefore overcome such ultimate finding. (24 Cal. Jur. 972.) The findings of probative facts can be used to overcome an express finding of the ultimate fact found, or where it appears that the trial court made the alleged finding of ultimate fact simply as a conclusion from the particular facts found. (*Corea* v. *Higuera,* 153 Cal. 451, 455 [95 Pac. 882, 17 L. R. A. (N. S.) 1018].) Herein, in conclusion of law numbered 2, the court gave the specific reasons for lack of damage or injury, which in turn makes it clear that the alleged finding in question was but a conclusion of the court, which, as hereinafter shown, was in turn contrary to the evidence.

With this rearrangement of the decision of the trial court, there presents itself the specification assigned in appellant's bill of exceptions on this appeal, viz.: Do the findings sup-

port the conclusions of the court and the judgment as given and made?

The facts found by the court and which are controlling on this appeal reveal in clear effect that respondents breached their contract for the sale of the stock in question when they failed to comply with appellant's demand of August 23, 1929, for the issuance and delivery of the stock, accompanied by delivery of the note required by the contract and his offer to pledge the stock when issued as security thereon. The contract clearly contemplated that upon payment by appellant of the sum of $4,000 cash and the execution and delivery of the $8,500 note described therein, respondents would be obligated to issue and deliver to appellant 125 shares of stock, which were to be pledged in turn with respondents as collateral security for payment of the balance on the note after dividends had been credited thereon. Appellant had paid the $4,000 as early as December, 1927, and dividends had been credited in December, 1928, and January, 1929, but due to the relationship between the parties and mutual forbearance and waiver, no effective efforts were made by either to supply the note called for under the contract nor to issue and deliver the stock until the discharge of appellant on June 29, 1929, although the latter had made repeated requests for the stock. Thereafter he made his demand and delivered his note, thus performing all that he was required to do under the contract. Respondent took his note and retained possession thereof and did nothing further toward performance. This constituted a breach of the contractual obligation to issue and deliver the stock upon receipt of the $4,000 cash and the note with pledge agreement therein.

The court having found facts constituting a breach of the contract, it follows as a matter of right and law that appellant was entitled to damages for such breach, and therefore the conclusion of the trial court that the failure of respondent White to issue and deliver the stock on appellant's demand of August 23, 1929, was not a repudiation of the agreement of June 30, 1927, becomes surplusage and irrelevant. Repudiation, or renunciation, as the term is more generally used, is but an act or declaration in advance of any actual breach, and consists usually of an absolute and unequivocal declaration or act amounting to

a declaration on the part of a promisor to the promisee that he will not make performance on a future day at which the contract calls for performance. It is in the nature of an anticipatory breach before performance is due, but does not operate as an anticipatory breach unless the promisee elects to treat the repudiation as a breach and brings suit for damages. (Beach on Modern Law of Contracts, secs. 411–415; *Alderson* v. *Houston,* 154 Cal. 1, 12 [96 Pac. 884]; *Walker* v. *Harbor Business Blocks Co.,* 181 Cal. 773, 778 [186 Pac. 356].) ▆ The facts found herein constitute a present breach without the interposition of repudiation or renunciation. The appellant, having fulfilled all conditions precedent to requirement of performance by respondents, had the right to require the latter to fulfill their obligations, and failure so to do on demand constituted a breach. (Sec. 1439, Civ. Code.) These views render it unnecessary to further entertain or pass upon the points raised and discussed by counsel for the respective parties in their briefs relative to repudiation and waiver of breach.

▆ Appellant's second point relates to damages recoverable herein. He assigns the conclusion of the trial court to the effect that no damage herein occurred, and that this presents a case of *injuria absque damno,* as unsupported by and contrary to the findings of fact. Also he assigns the conclusion that damages under section 3308 of the Civil Code may be regarded or considered only when full proprietary interest or ownership appears in the claimant as contrary to law.

That the conclusion first above mentioned is not supported by the evidence is manifest when comparing the statement of reasons for lack of damage contained in conclusion number 2 with the proofs. The statement that plaintiff had to offer the 125 shares to defendant White at its then book value, had the demand of plaintiff been complied with, is contrary to the evidence, which, as hereinbefore stated in abstracting the essentials of the contract of employment, clearly showed that such offer was required on such condition imposed only in event plaintiff *voluntarily* left the employ of the company, or his discharge by the company had been established as done for good and sufficient cause by a board of arbitrators. Neither of these events had occurred herein; hence it follows from the terms of the

contract that the stock sales contract with Julia Raquet was unaffected, and no right to terminate the same ever arose in favor of Julia Raquet or respondent White, her principal, nor did appellant ever become obligated to offer the stock to White.

As a consequence of this view of the evidence the trial court's conclusion that appellant would not have then had full proprietary interest in or ownership of the 125 shares of stock, had the written demand of appellant been complied with, falls for lack of any support, and by the same token the conclusion that this is a case of *injuria absque damno,* or wrong without injury, is unsupported by the facts. The expression "full proprietary interest or ownership of personal property" used by the trial court in its conclusions, was evidently adopted and used in view of the mistaken conclusion that appellant was under obligation to offer the stock for sale to respondents at book value. It being shown that such obligation was nonexistent, the sole remaining limitation on appellant's proprietary interest or ownership in the stock was the pledge thereof as security for the balance unpaid on the $8,500 note. ██ It has been repeatedly held that where personal property is pledged the general property and title remain in the pledgor, subject only to a lien in favor of the pledgee for the amount of his debt. (*White* v. *Ross,* 36 Cal. 414, 428; *Brewster* v. *Hartley,* 37 Cal. 15, 25 [99 Am. Dec. 237]; *Cross* v. *Eureka Lake etc. Canal Co.,* 73 Cal. 302, 306 [14 Pac. 885, 2 Am. St. Rep. 808]; *Sparks* v. *Caldwell,* 157 Cal. 401 [108 Pac. 276]; *People* v. *Robinson,* 107 Cal. App. 211, 220 [290 Pac. 470]; *Tracy* v. *Stock Assur. Bureau,* 137 Cal. App. 573, 579 [23 Pac. (2d) 41]; Civ. Code, sec. 2888.) It is for damage resulting to him by reason of respondents' refusal to transfer this general property and title in the 125 shares of stock to him, subject to redelivery as a pledge to respondent as pledgee, that appellant herein seeks recovery.

██ There is a maxim of jurisprudence for our guidance in section 3523 of the Civil Code, in this language: "For every wrong there is a remedy." In actions for breach of contract nominal damages are presumed to follow as a conclusion of law from proof of the breach. (*Browner* v. *Davis,* 15 Cal. 9, 11; Civ. Code, sec. 3360.) Section 3281

of the Civil Code provides that every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages. Section 3308 of the same code, as it existed at the time of the transactions and trial herein, furnished the measure of damage in such cases as this. It is the excess of value of the property to the buyer over the amount which would have been due to the seller under the contract if it had been fulfilled. The trial court herein having found that the value of the 125 shares of stock was $22,500, and that there remained $6,000 unpaid on the purchase price thereof, the excess of value is $16,500.

For the reasons above given the judgment and order appealed from are and each of them is reversed, and the cause is remanded with directions to the trial court to enter judgment in favor of plaintiff and against the defendant Raymond E. White for the sum of $16,500.

. Stephens, P. J., and Desmond, J., concurred.