H. L. Gumbiner v. Commissioner.
H. Gumbiner v. Commissioner
Docket No. 5312.
United States Tax Court
1946 Tax Ct. Memo LEXIS 3; 5 T.C.M. (CCH) 1119; T.C.M. (RIA) 46299; December 31, 1946
*3 Petitioner owned 230 of 260 outstanding shares of Gumbiner Amusement Company, of which he was president. He transferred such shares to one Schaak as security for the payment of a debt. Thereafter such stock was sold upon execution sale to a Bank which had obtained a judgment against petitioner on a defaulted promissory note of $38,000, payable March 6, 1933. After unsuccessful attempts to collect on the judgment and after the commencement of a suit by the Bank against petitioner and others, including Robert Gumbiner, who claimed an interest in the stock superior to the Bank, an agreement was entered into between the Bank, Petitioner, and Robert Gumbiner, providing inter alia, for the payment by petitioner of the indebtedness to Schaak, the transfer of the 230 shares by Schaak to the attorney of the Bank, the payment of $15,000 plus interest by petitioner to the Bank in settlement of its judgment, and, upon full performance by petitioner, the delivery of the 230 shares to him. During the years 1938 to 1941, inclusive, Gumbiner Amusement Company made payments to Schaak and the Bank required to be made by petitioner which were charged to petitioner's account on its books. In 1942 the *4 shares were transferred by the Bank, as pledgee, to petitioner. Held, that petitioner, during the taxable years, was a stockholder of the Company and that the advances made in his behalf during 1938, 1939 and 1941 were dividends to the extent of the net earnings of the Company and that the advances made in 1940 were not dividends, there being an operating loss in 1940 and no accumulated surplus. Held, further, that the collection of the 1939 deficiency is barred, but not the collection of the 1938 deficiency, the amount of the dividends omitted in that year being in excess of 25 per cent of the gross income reported in the return. Frank Mergenthaler, Esq., and Russell S. Bock, C.P.A., 548 South Spring St., Los Angeles 13, Calif., for the petitioner. A. J. Hurley, Esq., for the respondent. VAN FOSSAN determined income tax deficiencies of $419.88, $354.76, $946.69 and $655.83 for the years 1938, 1939, 1940 and 1941. The questions to be determined are (1) whether certain amounts paid by Gumbiner Amusement Company, a corporation, for and in behalf of petitioner in each of the taxable years are dividends and taxable to him as such, and if so, (2) whether the assessment and collection of deficiencies for 1938 and 1939 are barred. Findings of Fact The petitioner is a resident of Los Angeles, California, and he filed his income tax returns for the years 1938 to 1941, both inclusive, in the sixth collection district of California. The Gumbiner Amusement Company (hereinafter referred to as the Company), is a California corporation and during the years 1938 to 1941 was *6 engaged in the business of operating a theater in Los Angeles. Its outstanding stock in 1926 and at all times subsequent thereto, including the taxable years involved, consisted of 260 shares of the par value of $100 each, of which on March 1, 1926, petitioner was the owner of 230 shares. The petitioner has been its president at all times since its organization. On January 2, 1936, the petitioner was indebted to one Arnold Schaak in the sum of $22,375.18 and on that date transferred the 230 shares of Gumbiner Amusement Company owned by him to Schaak as pledgee. The remaining 30 shares were owned by Harry Rosenbloom and Lena Rosenbloom, his wife. Under date of December 5, 1932, the petitioner executed and delivered to the Continental Illinois National Bank and Trust Company of Chicago, hereinafter referred to as the Continental Bank, his promissory note for the sum of $38,000, payable on March 6, 1933. The petitioner defaulted in the payment of such note and Continental Bank, on July 25, 1935, instituted an action upon the note against petitioner in the Superior Court of California in and for the County of Los Angeles. On March 3, 1936, judgment was entered by the court in favor *7 of the bank and against petitioner for $47,809.44. Continental Bank caused four writs of execution to be issued upon the judgment and the 230 shares of Company were sold on one of the writs at an execution sale on February 17, 1937, to Continental Bank. On September 12, 1938, Continental Bank instituted an action in the Superior Court of California in and for the County of Los Angeles against petitioner, Robert Gumbiner and others for the purpose of having its rights to the 230 shares determined; for the appointment of a receiver for the Company and its assets; and to apply the assets to satisfy its judgment. After an unsuccessful attempt to collect the judgment, during which Continental Bank had the petitioner up for examination under supplemental proceedings, Continental Bank, under date of October 24, 1938, entered into a written agreement with petitioner, Robert Gumbiner and the Company. After reciting that Continental Bank obtained a judgment against petitioner for $47,809.44; that upon execution on 750 shares of Bertha Building Corporation and 230 shares of Company, Continental Bank purchased the same for $10; that the 750 shares were subject to a pledge to Bank of America National *8 Trust & Savings Association for the payment of $329,409.33 and the 230 shares were subject to a pledge to Arnold Schaak; that Robert Gumbiner claimed a pledge of each of such stocks subject only to the pledge to the Bank of America National Trust & Savings Association and Schaak, which claim Continental Bank did not recognize; and that Continental Bank had instituted an action for the purpose of having its rights determined in such stock and for other relief, the agreement provides inter alia, as follows: 1. H. L. Gumbiner and Robert Gumbiner individually and jointly agree: A. To pay to the Bank $15,000.00, plus interest, payable as follows: $2,500.00 cash upon the signing of this agreement and $200.00 on November 1, 1938, and $200.00 on the first day of each and every month thereafter during the time that they are paying the obligation to Arnold Schaak hereinafter mentioned, and after the payment in full of said obligation to Arnold Schaak to pay $80.00 per week until they have paid the total amount due hereunder. After any default in performing the terms of this agreement interest shall accrue on the unpaid balance at four per cent per annum from the date of said default; but *9 no interest shall be otherwise charged. B. That the Bank is the owner of the 230 shares of stock of Gumbiner Amusement Company, a corporation, subject only to the pledge to Arnold Schaak; and H. L. Gumbiner and Robert Gumbiner agree to have said stock issued in the name of Paul E. Iverson, as attorney for the Bank, and delivered to him when the obligation to Arnold Schaak hereinafter mentioned is paid in full. C. To pay Arnold Schaak at least $200.00 per month on account of his obligation, until paid in full, on which obligation there is now due, owing, and unpaid, the sum of $2,320.47; first payment to be made not later than November 1, 1938. D. That the salary to be paid by Gumbiner Amusement Company, a corporation, to H. L. Gumbiner, shall not exceed $100.00 per week, and the salary to be paid by said corporation to Robert Gumbiner shall not exceed $200.00 per week while this agreement is in operation, and said salaries shall only be paid so long as the said H. L. Gumbiner and Robert Gumbiner are not in default under the terms of this agreement. It is further understood that said Gumbiners shall draw no other sums from said corporation, whether as salaries, commissions, dividends, *10 or otherwise, while this agreement is in effect. E. That the pledge agreements between H. L. Gumbiner and Robert Gumbiner, dated January 2, 1936, and June 15, 1936, executed as security for the payment of an alleged [alleged] obligation of H. L. Gumbiner to Robert Gumbiner, shall be deemed cancelled and of no effect as to the Bank. * * * * *
H. That the Bank is the owner of the 750 shares of capital stock of Bertha Building Corporation, a corporation, subject only to the pledge to Bank of America aforementioned, and agree to execute all instruments and do every act necessary to enable the Bank to assert its rights as owner thereof. I. To deliver to the Bank a letter from Arnold Schaak whereby said Arnold Schaak promises the Bank to hold the stock of the Gumbiner Amusement Company, a corporation, for the Bank as owner thereof, subject only to the pledge to Arnold Schaak for the payment of an obligation of H. L. Gumbiner to Arnold Schaak on which there was due on September 29, 1938, the sum of $2,320.47, and to give to Paul E. Iverson all notices to which the owner of said stock would be entitled, if said Schaak exercises his rights under said pledge agreement. J. In the *11 event Arnold Schaak gives a notice of intention to sell under the terms of said pledge agreement, the said H. L. Gumbiner and Robert Gumbiner will do everything necessary to prevent said sale at least five days before said sale is noticed to be held. Failure by the said H. L. Gumbiner and Robert Gumbiner to do any of said acts will be considered a default under the terms of this agreement. K. If their rights in this agreement are terminated as hereinafter set forth, that all of their rights in the stock of the Gumbiner Amusement Company, a corporation, and Bertha Building Corporation, a corporation, will be thereby terminated without any further proceedings on behalf of the Bank. L. Robert Gumbiner agrees that any claim he now has by way of subrogation for payments made to Arnold Schaak on account of the obligation of H. L. Gumbiner to Arnold Schaak aforementioned, shall be waived and shall be subordinated to the rights of the Bank. * * * * *
3. The Bank agrees: A. When and if the $15,000.00, plus interest, if any, is paid in full, to execute and deliver to H. L. Gumbiner a full satisfaction of judgment in the case numbered 390850 of the Superior Court of the State of *12 California, in and for the County of Los Angeles; and to transfer and deliver all the above described stock held by the Bank, towit: said 230 shares of stock in Gumbiner Amusement Company and 750 shares of stock in Bertha Building Corporation and transfer all security held hereunder to H. L. Gumbiner or his nominee. The Bank agrees not to pledge, sell, or otherwise hypothecate any of said security or stock as long as there shall be no default by H. L. Gumbiner, Robert Gumbiner, or Gumbiner Amusement Company, under this agreement. * * * * *
C. Immediately upon the signing of this agreement and the receipt of $2,500.00 in cash, to dismiss without prejudice the action now pending in the Superior Court of the State of California in and for the County of Los Angeles, being case number 431944. D. So long as there is no default under the terms of this agreement, not to exercise any of its rights as a stockholder in the Gumbiner Amusement Company and Bertha Building Corporation, and hereby grants to H. L. Gumbiner its proxy to vote said stock and the power to exercise all other rights it has as owner of said stock during said time. * * * * *
Under date of December 5, 1939, Schaak *13 assigned, transferred and set over to Continental Bank all of his right, title and interest in and to the 230 shares of the Company. Petitioner's obligation to Continental Bank was satisfied and on April 16, 1942, Continental Bank canceled petitioner's note dated December 5, 1932, satisfied its judgment against petitioner on April 14, 1942, transferred to petitioner the 230 shares of the company by an assignment separate from the certificate as follows: FOR VALUE RECEIVED, Continental Illinois National Bank and Trust Company of Chicago, as Pledgee, hereby sells, assigns and transfers unto H. L. Gumbiner, without warranties, statutory or otherwise, (230) Shares of the Capital Stock of the Gumbiner Amusement Company represented by Certificate No. 6 herewith and does hereby irrevocably constitute and appoint H. L. Gumbiner attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises. Under date of April 27, 1942, the Company transferred the 230 shares to petitioner and issued to him its certificate No. 7 for 230 shares. The Company made payments required to be made by petitioner under the agreement of October 24, 1938 to *14 Continental Bank, upon the indebtedness to Schaak and for taxes on behalf of petitioner in the aggregate amount of $18,086.14, as follows: 1938
1939
1940
1941
Paid to Schaak
$5,115.35
$1,380.88
Paid to Continental Bank
600.00
2,360.00
$4,160
$4,160
Paid to attorneys in connection with agree-
ment with bank
277.00
Personal taxes paid for petitioner
32.91
Total
$5,992.35
$3,773.79
$4,160
$4,160 The above payments made by the Company in behalf of petitioner were charged to his account on the books of the Company. Prior to 1938 petitioner had withdrawn funds from the Company. The balance of such withdrawals in his account as of January 1, 1938 was $52,142.01. Such account shows a credit entry in 1939 of $200 representing an amount paid in by petitioner and a credit entry in 1940 of $8,154 representing a portion of the salary of petitioner as president and not withdrawn by him. The debit balance in the account as of December 31, 1941 was $61,874.15. No notes or other evidences of indebtedness or security were given by petitioner to the Company for the advances or withdrawals reflected in his account. The Company made no effort to collect *15 such advances or withdrawals and petitioner paid no interest to it for the use of such funds. In determining the deficiencies the Commissioner included in petitioner's taxable income for the years 1938 to 1941 the amounts of $5,992.35, $3,773.79, $4,160 and $4,160, respectively, as dividends received by him from the Company. Petitioner received, and reported in his income tax return for the years 1938 to 1941, inclusive, salary from the Company as follows: 1938
$5,214.28
1939
9,571.48
1940
10,457.12
1941
5,228.56
During the years involved, at the instance of petitioner, certain of his relatives advanced to the Company amounts as follows: Year
Advanced by:
Amount
1938
Nettie Levin, sister
$1,600
1940
Billy Gumbiner, son
100
1941
Nettie Levin, sister
800
Total
$2,500 The amounts were credited on the Company's books to the accounts of the individuals named. The net profits after deduction of income taxes of the Company during the years involved were as follows: Year
Net Profit or (Loss)
1938
$4,231.30
1939
1,530.71
1940
(1,427.89)
1941
3,558.96 The following is a summary analysis of the surplus *16 account of the Company as disclosed by its corporation income tax and excess profits tax returns for the years 1938 to 1941, both inclusive: December 31, 1938
$23,374.14
December 31, 1939
24,519.05
December 31, 1940
22,872.49
December 31, 1941
26,997.93 No dividends were declared by the Company in 1938 to 1941, inclusive. The returns of petitioner for 1938 and 1939 were filed on March 15, 1939 and March 15, 1940, respectively. The gross income reported in such returns was $5,214.28 and $9,571.48, respectively. The notice of deficiency was mailed to Petitioner March 15, 1944. Opinion VAN FOSSAN, Judge: The petitioner contends that the amounts paid out by the Company in his behalf during the taxable years and charged to his account on its books were loans or advances which he was under obligation to repay to the Company and not dividends, as determined by the Commissioner, because petitioner was not, during the years involved, a stockholder of the Company. He further contends that, even if he had been a stockholder, the surplus was insufficient to pay dividends in the amount of $18,086.14. The petitioner's contention that he was not a stockholder of the *17 Company and that Continental Bank was the owner of the 230 shares of that Company during the taxable years, is based primarily on the execution sale on February 17, 1937 of such shares to Continental Bank and the statement in the contract of October 24, 1938 that the Bank "is the owner of the 230 shares of stock of Gumbiner Amusement Company." It is true that such statement appears in the contract of October 24, 1938 but it must be read in the light of the entire agreement. It is also true that the law of California is that a sale by the sheriff has the same force and effect as a conveyance by the judgment debtor in the form of a quitclaim deed at the date of sale. Nobel v. Beach, 130 Pac. (2d) 430; In re Pierce's Estate, 81 Pac. (2d) 1037. However, that means no more than that upon the sale Continental Bank acquired only such title in the shares as petitioner at that time possessed. At the time of sale a certificate for the 230 shares was held by Schaak, to whom the shares had been transferred by petitioner on January 2, 1936 as a pledge or security for the payment of an obligation due him from petitioner. It was not until December 5, 1939, and after *18 the execution of the contract of October 24, 1938 and after he had received payment in full, that Schaak transferred the 230 shares to Continental Bank. From the evidence it appears that not only Schaak claimed an interest in such shares, whose claim Continental Bank recognized, but that one Robert Gumbiner, whose claim Continental Bank did not recognize, also claimed an interest in such stock subject only to the pledge of Schaak and superior to that of the Bank. The contract of October 24, 1938 was an agreement of compromise and settlement of the judgment, not only as to the money involved but also as to the rights of the Bank, petitioner and Robert Gumbiner. The paragraph of such agreement, which contains the language upon which the petitioner relies, is as follows: 1. H. L. Gumbiner and Robert Gumbiner individually and jointly agree: B. That the Bank is the owner of the 230 shares of stock of Gumbiner Amusement Company, a corporation, subject only to the pledge to Arnold Schaak; and H. L. Gumbiner and Robert Gumbiner agree to have said stock issued in the name of Paul E. Iverson, as attorney for the Bank, and delivered to him when the obligation to Arnold Schaak hereinafter *19 mentioned is paid in full. This is no more than a settlement of the claim of Robert Gumbiner in the shares involved, i.e., a relinquishment by Robert Gumbiner of his claimed interest in such shares to the Bank's attorney, Paul E. paragraph does not provide for the transfer of the 230 shares to Continental Bank but it provides for the transfer of such shares to the Bank's attorney, Paul E. Iverson. If at that time it was the intention of petitioner to recognize the Bank as the actual owner of such shares by virtue of the sheriff's sale, there was no necessity for the transfer of such shares to its attorney instead of to the Bank. The fact that the shares were to be transferred to Iverson, instead of to the Bank, indicates that the Bank was not to be recognized as the real owner of the shares and by virtue thereof a stockholder of the Company. It was stipulated that Schaak transferred all his interest and title to the 230 shares to Continental Bank, and apparently he did transfer such shares to the Bank. That, however, is not determinative. The assignment of the shares accompanied by delivery of a duly indorsed certificate as a pledge to Schaak took priority over the title to such *20 stock acquired by Continental Bank by purchase at execution sale. Clark v. Western Feeding Co., et al., 10 Cal. App. (2d) 727; 52 Pac. (2d) 991. Section 2986 of the Civil Code of California, defines a "pledge" as "a deposit of personal property by way of security for the performance of another act." Delivery of possession to the pledgee or a pledgeholder, who, if he accepts, must enforce all the rights of the pledgee, is essential to the validity of a pledge. Sections 2988, 2993 and 2996 of the Civil Code of California. It is not essential to the creation of a valid pledge that a transfer on the books of a corporation be made, but a pledgee has a right to register the shares to himself when he holds the certificate by proper endorsement or assignment. Without registration upon the books of the corporation the pledgee becomes vested with a legal interest or special property in the stock but he may vote the stock only if it has been registered in his name. Nevertheless, it is the settled rule that the pledgor retains the ownership of his stock and the pledgee has a mere lien thereon. Horn v. Klatt, 65 Cal. App. (2d) 510, 151 Pac. (2d) 149; Lawrence v. I. N. Parlier Estate Co., 15 Cal. (2d) 220, 100 Pac. (2d) 765; *21 Robinson v. Raquet, 1 Cal. App. (2d) 533, 36 Pac. (2d) 821; Tracy v. Stock Assurance Bureau, 132 Cal. App. 573, 23 Pac. (2d) 41, wherein it is stated: It is an established principle in this state that, as between pledgor and pledgee, the general property in a pledge remains in the pledgor, notwithstanding an apparent transfer of legal title to the pledgee. Section 2888 of the Civil Code of California provides: Notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien. The contract of October 24, 1938 was not a contract of sale of the shares by Continental Bank to petitioner. Under such contract, Continental Bank was to hold the 230 shares of the Company, after delivery of them to it by Schaak, until the amount of $15,000, the amount to be paid in compromise of the judgment debt, and interest had been paid to it by petitioner, at which time the shares were to be transferred to petitioner. In substance and effect this is no more than a pledge. It is to be noted that in assigning the shares to petitioner Continental Bank assigned them as "pledgee." Under section 2989, providing *22 that the "increase of property pledged is pledged with the property", a pledge of stock carries with it a pledge of the dividends. Savings Union Bank & Trust Co. v. Crowley, 176 Cal. 543, 169 Pac. 67. Hence, Continental Bank, by reason of the pledge agreement of Cotober 24, 1938, was entitled to dividends, if any, paid by the Company during the taxable years on the 230 shares involved. This brings us to the consideration of the question whether the payments made by the Company in behalf of petitioner in the taxable years were dividends, as determined by the Commissioner, or loans, as contended by petitioner. It is conceded by petitioner that the amounts involved could not have been compensation for services because under the agreement with Continental Bank he was limited as to the amount of compensation he could draw, i.e., not in excess of $100 a week. Prior to July 25, 1935, when the Bank instituted suit against him, petitioner defaulted in the payment of his note of $38,000. On March 3, 1936 the Bank obtained a judgment against him. The Bank thereafter made efforts to collect the judgment but was unable to do so. Petitioner apparently had no funds with which to repay *23 any loans made to him by the corporation. His account on the Company's books shows that he made but a small payment of $200 in 1939 and that the account in 1940 was credited with $8,154 representing salary due him and not withdrawn. In 1940 the Company sustained an operating loss of $1,427.89 and petitioner reported a salary of $10,457.12, or some $5,257.12 in excess of the limit fixed in the contract of October 24, 1938. Petitioner at all times was the president of the Company and owned 230 of the 260 outstanding shares. So far as the record discloses he had as complete control of the corporation as though he had been the sole stockholder. The Company made no effort to collect any of the advances or withdrawals made prior to 1938 totaling over $52,000 or the payments made in his behalf during the taxable years. Neither did it require petitioner to pay interest thereon and petitioner paid none. Petitioner never gave the Company a note or other evidence of indebtedness or security for the payment of the withdrawals. As stated in Roy J. Kinnear, 36 B.T.A. 153, 154: "Corporations do not ordinarily loan money to their stockholders, particularly without receiving some evidence *24 of indebtedness, and interest." The term "dividend" is defined in section 115 of the Internal Revenue Code: [1]
As disclosed by its income and excess profits tax returns, the Company had a surplus at the end of each taxable year substantially in excess of the payments made by the Company for petitioner. The petitioner, however, argues that the Commissioner should be consistent, that is to say that the withdrawals prior to 1938 should fall into the same category as those after 1937, which would wipe out the accumulated surplus as of December 31, 1937. The respondent argues that no attempt was made by petitioner to show by evidence the nature of the payments in years prior to 1938 or to show by the books of the Company a similar analysis of the surplus account for the prior years as shown for the taxable years. That is true, but upon cross-examination petitioner testified in substance that all the withdrawals of approximately $60,000 were of the same character. None of them were treated as a distribution of dividends on the books of the Company. It was stipulated that as of December 31, 1938 the surplus was $23,374.14. Since the net profit for 1938 was $4,231.30, *25 the surplus as of January 1, 1938 was approximately $19,142.84, considerably less than the debit balance of $52,142.01 in petitioner's account. In our opinion, the withdrawals during the taxable years, as well as the withdrawals in years prior to 1938, were a distribution of dividends to the extent of the earnings available therefor. Regensburg v. Commissioner, 144 Fed. (2d) 41; Ben R. Meyer, 45 B.T.A. 228; George P. Marshall, 32 B.T.A. 956. Although there was no surplus as of January 1, 1938, the Company had net earnings of $4,231.30 in 1938, $1,530.71 in 1939 and $3,558.96 in 1941. To the extent of such earnings the withdrawals in such years were dividends and taxable to petitioner as such. As to the credits of $200 and $8,154 to petitioner's account in 1939 and 1940, these so far as the record discloses, were payments on account without designation as to any particular item. Under the circumstances, these credits may be considered as applicable to the withdrawals made prior to 1938. Section 1479, Civil Code of California, Mercantile Trust Co. of San Francisco v. Doe, 146 Pac. 692. *26 The petitioner contends, since more than three years elapsed between the filing of the return and mailing of the notice of deficiency, that the deficiencies for 1938 and 1939 are barred. The respondent affirmatively alleged that the five-year period of limitations was applicable since petitioner omitted "from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." Section 275 (c), Revenue Act of 1938 and Internal Revenue Code. We have held that the withdrawals in 1938 and 1939 were dividends to the extent of the net earnings in such years. The 1938 net earnings of $4,231.30 are in excess of 25 per cent of the gross income of $5,214.28 reported in the 1938 return. However, the 1939 net earnings of $1,530.71 are less than 25 per cent of the gross income of $9,571.48 reported in the 1939 return. It follows that the collection of the 1938 deficiency is not barred under section 275 (b) but that the collection of the deficiency for 1939 is barred. Decision will be entered for petitioner for the year 1939. Decision will be entered under Rule 50 for the years 1938, 1940 and 1941. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this Chapter (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. (b) Source of Distributions. - For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113.↩