[Civ. No. 22718.   First Dist., Div. One.   July 28, 1966.]

BEN D'ANDREA et al., Plaintiffs and Appellants, v. R. DOUGLAS PRINGLE, Defendant and Appellant; JOSEPH W. WELCH, JR., Defendant and Respondent.

Miller, Osborne & Miller and O. Leland Osborne for Plaintiffs and Appellants.

Anderson, McMillan & Connolly and Hugh F. Connolly for Defendant and Appellant.

No appearance for Defendant and Respondent.

MOLINARI, J.—In this action brought by plaintiffs, Ben and Tresa D'Andrea and Philip and Florence Hughes,[1] against Joseph Welch and R. Douglas Pringle, the owner and lessee,[2] respectively, of certain lots which adjoin plaintiffs' property on the rear, to obtain the removal of that portion of a building constructed by Pringle on Welch's property which allegedly encroached upon plaintiffs' property, plaintiffs and Pringle have filed cross-appeals from the judgment of the trial court adjudging that Pringle's building encroached upon plaintiffs' property, refusing to grant an injunction compelling defendants to remove the encroachment, and granting defendants an easement across plaintiffs' property for the life

---

[1] Plaintiffs Ben and Tresa D'Andrea will hereafter be referred to as D'Andrea; similarly the Hugheses will be referred to as Hughes.

[2] In actual fact, Pringle is the assignee of Welch's original lessee, the H. M. Kane Company.

of the building subject to the payment by Pringle of $750 to D'Andrea and $750 to Hughes.[3]

Plaintiffs contend that the trial court's findings are not supported by the evidence and that the court, having determined that Pringle's building encroached upon plaintiffs' property, should have granted a mandatory injunction requiring defendants to remove the encroaching portion of the building. Pringle's appeal is directed solely to the amount of damages which the trial court awarded to plaintiffs,[4] it being his contention that there is no evidence in the record supporting these awards and that such awards are far in excess of the reasonable value of plaintiffs' respective parcels. Pringle states in his brief, however, that in the event the issues raised by plaintiffs on this appeal are determined in Pringle's favor this court may then deem his appeal as having been abandoned.

Turning to the record, we ascertain the following: D'Andrea is the owner of lots 37 and 38, block 26, San Bruno Park Third Addition, San Bruno; Hughes the owner of lots 35 and 36 in this block; and Welch and Pringle the owner and lessee, respectively, of lots 15, 16, 17 and 18 of this same block. Concerning the relationship of these parcels of property, the testimony and exhibits reveal that block 26 is approximately rectangular, bounded by El Camino Real on the west, Taylor Avenue on the north, Mastick Avenue on the east, and Chapman Avenue on the south; and that lots 35, 36, 37 and 38 front on Mastick Avenue, while lots 15, 16, 17 and 18 face El Camino Real and are immediately adjacent to the west of lots 35, 36, 37 and 38.

The building which plaintiffs sought to have established as encroaching upon the rear of their property is a dry-cleaning plant constructed by Pringle on Welch's property in the fall of 1962. In support of their contention that this building encroached upon their property, plaintiffs produced testimony of two licensed civil engineers, namely, Clarence L. White and Philip B. Lygren. White testified that he surveyed plaintiffs' property in September 1962 and that his survey revealed that Pringle's proposed building encroached from 42/100 of a foot

---

[3] The trial court also entered judgment in favor of Welch on his cross-complaint seeking indemnification against Pringle and Kane Company. Although Pringle's notice of appeal was also directed to that portion of the judgment which awarded Welch attorneys' fees and costs of suit on his cross-complaint, Pringle subsequently abandoned this portion of his appeal.

[4] In his brief on appeal Pringle abandoned his appeal from the judgment insofar as it found that an encroachment did in fact exist.

on the north end of D'Andrea's lots to 1.08 feet on the south end of Hughes' lots. Lygren testified that he surveyed plaintiffs' property in November 1962 and that his survey revealed encroachments from 6/100 of a foot to 1.14 feet. In contrast with this testimony defendants produced a survey of their property made in August 1962 by James J. Breen, a licensed civil engineer. This survey revealed that defendants' property extended beyond the back fence on plaintiffs' property and that Pringle's building, which extended up to but not beyond the fence, did not encroach upon plaintiffs' property. As revealed by the testimony of White, Lygren and Breen, the reason for the discrepancies between the surveys made by each of these engineers was that each relied upon different monuments: On the one hand, White and Lygren, who believed that El Camino Real was wrongly set in this area, relied upon certain monuments found on Mastick Avenue; on the other hand, Breen relied upon survey date relating to El Camino Real as determined by the Division of Highways of the State of California.

D'Andrea testified that in September 1962 he noticed that the workmen on defendants' property, who were excavating for the foundation of Pringle's building, were digging all the way up to D'Andrea's back fence; that at this time he told the workmen, including Pringle's foreman, that this fence was about one foot inside the rear boundary of D'Andrea's property and that accordingly the workmen were digging on D'Andrea's property; that he then went to the San Bruno City Hall, obtained the dimensions of his lot, measured it, and again informed Pringle's foreman of the impending encroachment; that when the workmen continued their work, he contacted White, who, with D'Andrea's assistance, surveyed D'Andrea's property; that based on this survey he and White informed Pringle's foreman that he was encroaching on D'Andrea's property and that the amount of encroachment was so substantial that it could not be accepted without further substantiation; that at that time White pointed out to the foreman that the prospective building was encroaching more and more as it ran in a southerly direction toward Hughes' property; that the construction work continued on defendants' property despite D'Andrea's and White's warnings; that D'Andrea contacted Attorney Raymond Daba, who on September 27, 1962 wrote a letter to Pringle with a copy to Welch, advising Pringle of the impending encroachment and instructing him to cease construction or continue at his own peril; and that D'Andrea received no response to this letter

and the construction work continued. D'Andrea further testified that he continued to warn Pringle's workmen of the encroachment and that on one occasion, after the building was constructed, he talked to Pringle about the encroachment and he and Pringle went to the city hall to discuss the problem with the city surveyor, but the city surveyor told them that since the property involved was privately owned the city would not involve itself in the dispute.

Hughes also testified that he complained to Pringle's workmen that they were encroaching on his property and that the rear wall of Pringle's building was going to cut through Hughes' garage.

Pringle testified that before he began construction of his cleaning plant he and his foreman obtained a plot plan from a title company and attempted to reconcile the crosses on the sidewalk with the size and dimensions of his lots as indicated on the plot plan; that when it appeared that defendants' property as described on the plot plan extended into plaintiffs' rear yards, he contacted Breen to make a survey of defendants' property; that Breen then delineated defendants' property with stakes and markers, indicating that defendants' rear property line did in fact extend into plaintiffs' yards; and that based upon this survey Pringle commenced construction of his cleaning establishment, but set his building over a foot forward from the rear of defendants' property as determined by Breen's survey. Pringle further testified that after his workmen had poured the back footing for the cleaning plant, he was informed by his foreman that several neighbors had complained that Pringle's building was encroaching upon the adjoining property; that subsequently D'Andrea informed Pringle personally of the impending encroachments; that Pringle then told his workmen to stop construction work on the rear of the building for 24 hours; that Pringle at that time contacted Welch, who instructed Pringle to contact White; and that, upon contacting White and discovering that he would not be available for eight or nine days, Pringle again contacted Breen, who confirmed his original survey. Pringle also testified that he did accompany D'Andrea to the city surveyor's office, but denied receiving any correspondence from Attorney Daba.

The record discloses further that plaintiffs produced no evidence with respect to any damages sustained by them. D'Andrea did testify, however, that he used the strip of land in dispute as a vegetable garden "but not much." Finally Pringle testified that the cost of moving the rear wall of his

building would be at least $17,879, this large cost being due to the expenses of moving plumbing and electrical accessories for 20 dry-cleaning machines.

The trial court in the present case found that the rear wall of Pringle's building encroached upon plaintiffs' property to "a depth of approximately 14 inches to a depth of approximately 8 inches, for a total distance upon plaintiffs' rear property line of approximately 83 feet."[5] It is upon the basis of this finding that plaintiffs contend that the court below was required to grant a mandatory injunction compelling defendants to remove the encroaching structure.

The applicable rule is stated in *Brown Derby Hollywood Corp.* v. *Hatton*, 61 Cal.2d 855, 858 [40 Cal.Rptr. 848, 395 P.2d 896], as follows: ▮ "In an action between adjoining landowners, when the defendant without privilege occupies the plaintiff's property, an injunction is granted to remove the encroachment. [Citation.] But 'where the encroachment does not irreparably injure the plaintiff, was innocently made, and where the cost of removal would be great compared to the inconvenience caused plaintiff by the continuance of the encroachment, the equity court may, in its discretion, deny the injunction and compel the plaintiff to accept damages.' (*Christensen* v. *Tucker*, 114 Cal.App.2d 554, 559 [250 P.2d 660] [and other citations])." The question for determination in the instant case, accordingly, is whether the trial court erred in finding that in the light of this rule plaintiffs were not entitled to an injunction.

Turning to the trial court's findings in the light of the factors required to be established under the foregoing rule we find them to be inconclusive. Adverting, first, to the factors having to do with whether the encroachment irreparably injured plaintiffs and whether the cost of removal of the encroachment would be great compared to the inconvenience caused plaintiffs by the continuance of the encroachment, we note that the court below made no findings on these issues, but only conclusions of law unsupported by any findings of ultimate fact. ▮ It is well settled that the test for determining whether findings state ultimate facts, rather than evidentiary facts or conclusions of law, is the same as that applied in determining the sufficiency of allegations in a pleading. (*Mc-*

---

[5]Pringle concedes that this determination by the trial court, resulting from the court's resolution of a conflict in the evidence, is binding upon him and that this court is powerless to reconsider the question of whether an encroachment does in fact exist.

*Carthy* v. *Brown,* 113 Cal. 15, 18 [45 P. 14]; *Miller* v. *Gusta,* 103 Cal.App.32, 37 [283 P. 946]; *Goldman* v. *Goldman,* 169 Cal.App.2d 103, 104 [336 P.2d 952]; 2 Witkin, Cal. Procedure (1954) Trial, § 112, p. 1843.) ▮ With regard to allegations as to the fact that damage or injury was or was not suffered or that it was suffered to a certain extent, it is the general rule that such averments, unaccompanied by facts to support them, are conclusions of law. (71 C.J.S., Pleading, § 31, p. 79; 39 Cal.Jur.2d, Pleading, § 48, p. 74; see *Wallace* v. *Macdonough Theatre Co.,* 34 Cal.App.498, 499 [168 P. 144]; *Spring Valley etc. Co.* v. *Fifield,* 136 Cal. 14, 15 [68 P. 108]; *Starr Piano Co.* v. *Martin,* 119 Cal.App. 642, 651-652 [7 P.2d 383]; *Robinson* v. *Raquet,* 1 Cal.App.2d 533, 541 [36 P.2d 821].)[6] ▮ Applying this rule to the instant case with respect to the findings made, we note that the court merely "found" that plaintiffs "have not suffered irreparable injury," and that "The hardship to defendant, R. Douglas Pringle in bearing removal costs of the encroaching building would be greatly disproportionate to the hardship caused by [*sic*] plaintiffs. . . ." These are not findings of ultimate fact but conclusions of law which are not supported by any facts found. Accordingly, they must be disregarded. (See *Wells* v. *Comstock,* 46 Cal.2d 528, 532 [297 P.2d 961]; *Robinson* v. *Raquet, supra,* p. 541; *Hunter* v. *Sparling,* 87 Cal.App.2d 711, 721 [197 P.2d 807]; *Lewis Food Co.* v. *Fireman's Fund Ins. Co.,* 207 Cal.App.2d 515, 524 [24 Cal.Rptr. 557]; *Wallace* v. *Macdonough Theatre Co., supra,* p. 499; *Spring Valley etc. Co.* v. *Fifield, supra,* p. 15; and see *Helms Bakeries* v. *State Board of Equalization,* 53 Cal.App.2d 417, 425-426 [128 P.2d 167], re meaning of irreparable injury.)

▮ Turning our attention to the crucial issue as to whether the encroachment was innocently made, we first note that in *Brown Derby* it was stated as follows: "The defendant is not innocent if he wilfully encroaches on the plaintiff's land. [Citations.] To be wilful the defendant must not only know that he is building on the plaintiff's land, but act without a good faith belief that he has a right to do so. [Citation.]" (P. 859.) In the instant case the trial court made three findings, upon conflicting evidence, touching upon the issue as to whether defendants acted innocently. These were to

[6]The case of *Alkus* v. *Johnson-Pacific Co.,* 80 Cal.App.2d 1, 5 [181 P.2d 72], disagrees with the holding in *Robinson* that the statement that " 'it is not true that plaintiff has been damaged' " is a conclusion of law and asserts, without citation of authority, that the majority of California cases hold that such statement is one of ultimate fact.

the effect that it was difficult to survey the subject property because of the disappearance of surveyor's monuments; that the defendants' act of encroachment was based upon a survey by a licensed surveyor; and that during the excavation of his property Pringle was put on notice that he was constructing a building on plaintiffs' property over plaintiffs' objection.[7] The trial court, however, drew no conclusion as to whether defendants' activities were done innocently or in good faith.

Although there is some authority that good faith, when constituent and essential in a cause of action or defense, is a fact and may be alleged as such (*Hickey* v. *Ritz-Carlton Restaurant & Hotel Co.*, 96 F.2d 748; *Markey* v. *Hibernia Homestead Assn.* (La.App.) 186 So. 757), it is the general rule that allegations that acts were done with a certain purpose or intent or in good faith or bad faith are mere conclusions of law (71 C.J.S., Pleading, § 32, p. 80; *Strassburger* v. *Irving Trust Co.*, 261 App.Div. 210 [24 N.Y.S.2d 873]; *Schwartz* v. *Kahn*, 183 Misc. 252 [50 N.Y.S.2d 931]; *Moore* v. *Tumwater Paper Mills Co.*, 181 Wash. 45 [42 P.2d 29]).     Accordingly, unless the facts upon which an averment of good faith or bad faith is based are stated, such an averment, whether in a pleading or in a finding, is a conclusion of law. (See *Alexander* v. *Anderson*, 48 N.Y.S.2d 102; 71 C.J.S., Pleading, § 32, p. 80.)

In the present case, even if we were to assume, which we do not, that an averment of innocence or good faith is a statement of fact and may be alleged as such, we note that no such statement was made in the instant findings.     We also note that the court below failed to make a statement by way of a conclusion of law as to whether defendants acted innocently or in good faith.     Although the mere absence or omission of a specific conclusion will not avail to defeat a judgment if the findings of fact would support conclusions necessary to the judgment (*Takekawa* v. *Hole*, 170 Cal. 323, 325 [149 P. 593]; *Prothero* v. *Superior Court*, 196 Cal. 439, 443 [238 P. 357]),

---

[7]These findings read as follows:

"5. A definitive survey of the subject property was, and is hampered by the disappearance of many monuments through changes in the area since 1905.

"6. Defendants' act of encroachment was based on an independent survey by a licensed surveyor and civil engineer.

". . . . . . . . . .

"9. Defendant, R. Douglas Pringle was put on notice that he was constructing a building on plaintiffs' said property over plaintiffs' prior objection during the excavation of the property."

we do not have such supporting findings of fact in the case at bench.

The finding that during the excavation for his building Pringle was put on notice that he was constructing a building on plaintiffs' property and that Pringle was constructing over plaintiffs' objections suggests a lack of good faith, particularly in view of the fact that Pringle continued construction after plaintiffs' objections. (See *Brown Derby Hollywood Corp.* v. *Hatton, supra,* p. 859; *City of Dunsmuir* v. *Silva,* 154 Cal.App.2d 825, 828 [317 P.2d 653]; *Morgan* v. *Veach,* 59 Cal.App.2d 682, 688-689 [139 P.2d 976]; *Felsenthal* v. *Warring,* 40 Cal.App.119, 128 [180 P. 67].) With regard to the finding that a definitive survey was hampered because of the disappearance of certain monuments, such finding does not warrant the conclusion that Pringle was acting innocently or in good faith in the absence of a finding that such difficulty in surveying in any way induced or caused Pringle to unintentionally encroach upon plaintiffs' land. Finally, the fact that the act of encroachment was based on the survey of a licensed surveyor in and of itself does not compel or warrant the conclusion that Pringle acted innocently or in good faith in view of the finding that he was put on notice by plaintiffs prior to the construction that he was encroaching on their land and the finding that Pringle did in fact encroach thereon. If such were the case a defendant in an encroachment action could always establish good faith by showing that he proceeded on the basis of an independent survey. The question for the trial court's determination in the instant case was whether Pringle was justified in relying upon Breen's survey and in proceeding with the construction notwithstanding the fact that he received notice of the other surveys and of plaintiffs' objections.

The crucial issue in the present case is the same as that in *Brown Derby* where the Supreme Court put the inquiry thusly: "Did defendant . . . act in good faith or did he act in wilful disregard of plaintiff's rights hoping that a court would allow the structure to remain and grant only a remedy of damages?" (P. 860.) This issue has not been determined in the instant case by the inconclusive findings which the trial court made.

Assuming, *arguendo,* that the findings would support an application of the rule announced in *Brown Derby* warranting the denial of an injunction and the granting of damages, we are of the opinion that the trial court erred in its award of damages. No evidence was introduced as to the value of plaintiffs' land or the reasonable value of the use thereof upon

which to predicate an award of $750 each to D'Andrea and Hughes. Accordingly, the finding upon which such awards are based is not supported by the record.

We conclude, therefore, that the judgment must be reversed because the findings of fact relating to the issues as to whether or not the encroachment irreparably injured plaintiffs, whether it was innocently made, and whether the cost of removal would be great compared to the inconvenience caused plaintiffs by the continuance of the encroachment are inadequate; because findings on these material issues have not been made; and because findings upon the issue of damages to plaintiffs have not been made.

On remand the trial court may, if it is so disposed, receive additional evidence on the issues dealing with the three factors delineated in the *Brown Derby* rule and with respect to which we have found the findings to be inadequate and deficient. In the event that the trial court determines upon the evidence now before it or upon such evidence and such additional evidence received by it that plaintiffs are not entitled to an injunction but are compelled to accept damages on the basis of the applicable principles, it shall receive evidence on the issue of damages to plaintiffs.

It is ordered, therefore, that the judgment be reversed and that the cause be remanded with directions to the trial court to set aside the judgment and the findings of fact and conclusions of law; to receive evidence on the limited issues relating to the three factors delineated in the *Brown Derby* rule if the trial court shall in its discretion deem the reception of such evidence necessary; to receive evidence on the issue of damages if such reception shall be required in conformity with the views herein expressed; and thereupon, having reexamined and redetermined these limited issues, including the issue of damages if called upon to do so, to make and file findings of fact on *all* the issues in the case based upon the evidence now before it and such additional evidence, if any, which the trial court may have received; to draw proper conclusions of law therefrom; and to enter judgment accordingly. Plaintiffs shall recover costs on appeal. Defendant Pringle shall not recover costs on appeal.

Sullivan, P. J., and Sims, J., concurred.